In re HOUBIGANT, INC., Debtor.

Bankruptcy No. 93 B 45767 (JLG).

United States Bankruptcy Court, S.D. New York.

June 7, 1995.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for debtor.

Axelrod, Cornachio, Famighetti & Davis, Mineola, NY, for Atlantis Intern., Inc. and Brian Appel.

*MEMORANDUM DECISION ON DEBTOR'S MOTION FOR SUMMARY JUDGMENT EXPUNGING CLAIM*

JAMES L. GARRITY, Jr., Bankruptcy Judge.

On January 31, 1995, Atlantis International, Ltd. ("Atlantis") and Brian Appel (collectively, "Claimants") filed a Proof of Priority Claim dated January 30, 1995 (the "Claim") against Houbigant, Inc. ("Houbigant" or "debtor") in the amount of $6,413,000.00. As support for that claim, Atlantis annexed a verified complaint dated January 30, 1995 (the "Verified Complaint"). The caption of the complaint reads: *Atlantis International, Ltd. and Brian Appel v. Houbigant, Inc. D.I.P., Parfumes Parquet, Luigi Massironi, Ed Weinberg, Mike Sherman, Kidd Kamm & Company, C.P. Holdings, Inc., Renais-*

*sance Cosmetics, Inc., Thomas Bonoma, Terry Theodore and Sean Greene.* The trial court is designated as the New York State Supreme Court, Nassau County. We understand that the complaint was not filed with the state court or served on any defendant. Houbigant objected to the Claim and has moved pursuant to Fed.R.Civ.P. 56(b) and Bankruptcy Rules 7056 and 9014 for summary judgment expunging it. For the reasons discussed below, the motion is granted.[1]

### Facts

On November 18, 1993 (the "Filing Date"), Houbigant and its domestic subsidiaries filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code ("the Code"). Since that time they have continued in possession and control of their businesses and assets as debtors in possession pursuant to §§ 1107 and 1108 of the Code. Pursuant to court order, these cases have been procedurally consolidated and are being jointly administered. No trustee or examiner has been appointed in any of the cases.

Houbigant is the parent of a group of domestic and foreign companies which, prior to the Filing Date, designed, marketed and distributed perfumes and toiletries worldwide. Its licensed brands are sold in the United States, the Netherlands, France, the United Kingdom, Germany and Canada. Its products include such brand names as "Chantilly", "Lutece", "Raffinee" and "Quelques Fleurs". Sherman Aff. ¶ 4.[2] Michael J. Sherman is the Executive Vice President—Special Projects of Houbigant. *See* Sherman Aff. ¶ 1. Luigi Massironi is Houbi-

gant's Chief Executive Officer. *See* Massironi Aff. ¶ 1. Prior to the Filing Date, debtor was responsible for selling Houbigant products to the United States markets, while Houbigant Limited, Horley Laboratories, and Houbigant SARL, as debtor's wholly owned foreign subsidiaries, serviced foreign markets. Sherman Aff. ¶ 4. Those subsidiaries are not debtors herein, although each may be in bankruptcy, or its equivalent, under the laws of the country of its incorporation. *Id.*; Massironi Reply Aff. ¶ 7.

Post petition, Houbigant discontinued its design, marketing and distribution operations and became a trademark licensor. Sherman Aff. ¶ 4. On June 2, 1994, we authorized Houbigant to implement and effectuate a license agreement ("License Agreement") with New Fragrance License Corp. ("New Fragrance").[3] Thereunder, in exchange for royalty payments, Houbigant licenses certain patents, trademarks, trade names, and/or application therefor and the technical knowledge with respect to them. Sherman Aff. ¶ 5; License Agreement § 2. The agreement mandates that Houbigant (i) fully and properly protect its licensed trademarks and (ii) police the markets covered by the agreement to prevent the entry and or distribution of grey market goods. Sherman Aff. ¶ 8; License Agreement, §§ 8(3), 12 and 13.[4]

As early as 1991, Houbigant was selling product to remarketers and diverters who resold it to other dealers, usually to close-out stores or similar-type retailers. Sherman Aff. ¶ 18. In 1991, Houbigant realized ap-

---

1. Our subject matter jurisdiction of this matter is predicated on 28 U.S.C. §§ 1334(b) and 157(a), and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(B).

2. "Sherman Aff." means the Affidavit of Michael J. Sherman, sworn to April 11, 1995, submitted in support of this motion. "Massironi Aff." means the Affidavit of Luigi Massironi, sworn to April 11, 1995, submitted in support of this motion. "Massironi Reply Aff." means the Reply Affidavit of Luigi Massironi, sworn to May 16, 1995, submitted in further support of the motion.

3. A copy of the License Agreement is annexed as Exhibit A to the Sherman Affidavit. Subsequent to the approval of the License Agreement, New Fragrance changed its name to Parfums Parquet, Inc. ("PPI"). Hereinafter, the terms New Fragrance and PPI are used interchangeably.

4. Trademark holders and promoters of brands traditionally take steps to "police the market" to ensure that the brands are sold and marketed properly. This protection is often accomplished by placing strict limits—*e.g.,* by territory or type of retailer or wholesaler—on the sale and distribution of the product. Goods sold and/or distributed by entities not authorized to distribute or sell them may be considered "unauthorized." *See* Sherman Aff. ¶ 13.

proximately $500,000 from those sales. *Id.* By fiscal year 1993, those sales approximated $3,000,000. *Id.* During the negotiations leading to the execution of the License Agreement, PPI expressed concern over the amount of grey market goods in the United States. Houbigant was similarly concerned because the royalties payable under the License Agreement are a function, in part, of sales of the licensed products. Thus, to the extent grey market products undercut PPI sales, debtor's royalty payment would be correspondingly reduced. *Id.; see generally* Sherman Aff. ¶¶ 17–23. On June 10, 1994, Sherman saw an advertisement placed by Chanel on the back page of *Women's Wear Daily* warning "mis-users" of its trademarks that it would protect its marks. *See* Sherman Aff. ¶ 27; Ex. C. He viewed it as an effective tool for Chanel to protect its trademarks and image, and, having recently negotiated and executed the License Agreement, and believing that there were unauthorized Houbigant products in the marketplace, he concluded that an advertisement or notice similar in form and content to Chanel's might be one way for Houbigant to fulfill its obligation under the License Agreement to protect and preserve its trademarks. Sherman Aff. ¶¶ 27–28. Sherman raised the concept of printing a notice like Chanel's with Thomas Bonoma, PPI's Chairman, who allegedly agreed that it was a good idea. Sherman Aff. ¶ 28.

In 1993, Atlantis acquired in excess of 250,000 units of Chantilly and Raffinee brand perfumes from Unilex, Ltd. ("Unilex"). Appel Aff. ¶ 4; Ex. K.[5] We understand that Unilex is a British company engaged in the distribution of perfumes worldwide. *Id.* Thereafter, Atlantis reached agreements with A. Rosenblum, Inc. ("A. Rosenblum"), Model Imperial Supply Company ("Model Imperial") and W.H. Kennys ("Kennys") for the sale of a total of 90,000 units of the product. Appel Aff. ¶ 6. On or about June 14, 1994, Appel met with Terry Theodore, PPI's president, and Sean Greene, its Vice President, at Houbigant's office in Ridgewood, New Jersey. During that meeting Theodore allegedly advised Appel that PPI would not be acquiring Atlantis' inventory of Chantilly and Raffinee fragrances. Appel Aff. ¶ 9. Theodore also allegedly informed Appel that Kidd Kamm & Company[6], PPI and Houbigant would take the position that the Chantilly and Raffinee fragrances possessed by Atlantis were sub-standard and diluted. *Id.* Additionally, Theodore allegedly threatened to disparage Appel's products in the industry. Appel Aff. ¶ 10. On June 21, 1994, while Appel was at the Atlantis booth at the National Association of Chain Drug Store Trade Show, in New Orleans, Louisiana, Sean Greene allegedly advised him that advertisements were being run asserting that Atlantis' inventory of Chantilly and Raffinee fragrances was sub-standard. Appel Aff. ¶ 11. Greene also allegedly stated to Appel that he (Greene) had been telling people in the perfume industry that Atlantis' Chantilly and Raffinee fragrances were sub-standard and diluted. *Id.*

On June 24, 1994, Houbigant caused the following notice (the "Notice") to be published in *Women's Wear Daily:*

On June 2, 1994, the United States Bankruptcy Court for the Southern district of New York approved an exclusive, long term license to Parfums Parquet to manufacture, distribute and sell Houbigant, Inc.'s Chantilly, Raffinee, Lutece, French Vanilla & Demi–Jour brands, among others.

Please be aware that there are rogue enterprises attempting to profit by selling grey-market, off-size, diluted, sub-standard, non-standard, foreign sourced and "knock off" merchandise that may resemble, but are not products of Houbigant, Inc.

Please be advised that we will use all resources available from the Bankruptcy Court, other courts and other agencies to the greatest extent permitted to protect and preserve the integrity of our products, our brand names, our trademarks and the license.

---

5. "Appel Aff." means the affidavit of Brian Appel, sworn to May 9, 1995 submitted in opposition to Houbigant's motion.

6. Kidd Kamm & Company is an affiliate of PPI.

Be advised: if you are selling or considering buying grey-market, off-size, diluted, sub-standard, non-standard, foreign sourced or "knock off" copies of our brands, we will take appropriate legal action. These products are not covered by our product liability insurance and neither Houbigant, Inc. nor Parfums Parquet will warrant these products, nor recognize the under our usual return policy.

We will, of course, continue to provide our usual full-faith promotional support and return policies for those retailers selling genuine, authorized Houbigant, Inc. products. Sincerely,

/s/ Michael J. Sherman

Houbigant, Inc. D.I.P.

Michael J. Sherman

Executive Vice President for Bankruptcy Matters

*See* Appel Aff. Ex. A. Sherman approved the final version of the Notice before signing it. Massironi reviewed a draft of the Notice and did not object to form or its content. Sherman Aff. ¶¶ 29–30; Massironi Aff. ¶¶ 13–14. Bonoma approved the text of a PPI advertisement appearing in the June 24 edition of *Women's Wear Daily* opposite the Notice. Although Sherman reviewed the final draft of that ad, Houbigant maintains that it was not involved in preparing or placing it. Sherman Aff. ¶ 32; Massironi Aff. ¶ 6.

On July 20, 1994, Claimants filed a Notice Of Motion For Disclosure Prior To Commencement Of Action under § 3102(c) of New York's Civil Practice Law and Rules [7] in the Supreme Court of the State of New York, County of Nassau (the "Motion"), seeking precomplaint discovery of Houbigant, certain key directors and officers of Houbigant, PPI, and certain affiliates thereof and various officers of those entities. The factual predicate for the Motion is contained in Brian Appel's affidavit of July 20, 1994 (the "July Affidavit"). He contended that Claimants had been damaged by the Notice and the statements described above attributed by

Appel to Greene. He advised that Claimants intended to commence an action against Houbigant, Sherman, Massironi, PPI and others for libel, slander and tortious interference with contract, but that they required additional information to properly frame their complaint. On or about August 5, 1994, pursuant to 28 U.S.C. § 1452(a) and Bankruptcy Rule 9027, Houbigant removed the Motion to the United States Bankruptcy Court for the Eastern District of New York. On or about August 12, 1994, Houbigant moved pursuant to 28 U.S.C. §§ 1412 and 1404(a) to transfer the Motion to this court. On or about August 17, 1994, Claimants objected to the Motion and cross-moved for an order pursuant to 28 U.S.C. § 1452(b) and Bankruptcy Rule 9027 remanding the Motion to the state court. By order dated September 20, 1994, Chief Judge Conrad Duberstein of the United States Bankruptcy Court for the Eastern District of New York granted Houbigant's venue motion, but did not consider the merits of Claimants' remand motion.

On November 17, 1994, we conducted a hearing on the remand motion. Claimants' counsel insisted that with the evidence he expected to obtain through discovery, he could convince debtor of the merits of the allegations contained in the July Affidavit, and settle the dispute before it was crystallized in a complaint filed in the state court or in a claim filed in this case. In October 1994 debtors filed a joint plan of reorganization and were working towards a confirmation hearing in February 1995. During the November 17 hearing all parties acknowledged that a plan could not be timely confirmed unless the matters raised in the July Affidavit were expeditiously resolved. Claimants maintained that they were indifferent on whether this Court or the state court resolved the merits of Appel's allegations, provided that if the matter was resolved in this Court they received a jury trial and all nondebtors consented to our jurisdiction. Debtor was adamant that Appel's allegations were meritless. Nonetheless, counsel agreed to

---

**7.** Section 3102(c) states in relevant part, as follows:

Before an action is commenced, disclosure to aid in bringing an action, to preserve information or to aid in arbitration, may be obtained, but only by court order ...

CPLR § 3102(c).

make Sherman available for a Bankruptcy Rule 2004 examination in lieu of an examination under CPLR § 3102(c). Counsel also agreed that debtor would use its best efforts to cause all parties to agree to litigate the merits of Appel's allegations in this Court. Claimants contended that debtor also should produce Massironi for examination. Debtor insisted that as between Sherman and Massironi, Sherman possessed more knowledge on matters relating to the Notice and the other matters raised in July Affidavit. We directed that Sherman be deposed, without prejudice to Claimants' right to renew their request to depose Massironi. We adjourned the hearing (initially for 30 days) to permit Claimants to depose Sherman.

Sherman's deposition was not conducted until January 11, 1995. On January 17, 1995, we reconvened the remand hearing. Claimants advised that based on Sherman's testimony, they desired to depose Bonoma. Because the parties had not finally ascertained whether Bonoma and PPI would consent to Rule a 2004 examination, we adjourned the hearing until January 25, 1995, to afford them an opportunity to resolve that issue. On January 25 we were advised that Bonoma would consent to a Rule 2004 examination in Boston, Massachusetts, on January 29, 1995, and that PPI and Bonoma would consent to the jurisdiction of this Court to resolve the merits of Appel's contentions, provided Claimants agreed to litigate those matters in this Court. Bonoma's counsel explained that he sought that assurance because based on conversations he allegedly had with Claimants' counsel, he had reason to believe that promptly after Bonoma's 2004 examination was completed, Claimants would sue the non-debtors in state court. Bonoma's counsel insisted that Claimants did not require pre-complaint discovery, and were not entitled to depose Bonoma pursuant to Rule 2004. He explained that Bonoma was prepared to consent to a deposition to advance this Court's resolution of the merits of Appel's allegations. Claimants did not commit to litigate the matters raised in the July Affidavit in this Court. Accordingly, Bonoma was not deposed in January 1995. Claimants never again sought to take Bonoma's deposition.

The Claim was filed on January 31, 1995. The Verified Complaint covers all of the matters raised by the July Affidavit, and more. On February 15, 1995, Houbigant objected to the Claim. On or about March 14 and April 15, 1995, it transmitted a stipulation to Claimants providing for the joinder of all parties named in the Verified Complaint in an action in this Court, consenting to this Court's jurisdiction and agreeing that if necessary, the merits of the Claim would be resolved by a jury trial. The stipulation was executed on behalf of Houbigant, Sherman and Massironi and the cover letter accompanying the stipulation represented that counsel for PPI and related parties also agreed to the joinder. Claimants have not executed the stipulation and apparently are not willing to do so. Rather on or about March 8, 1995, Claimants filed a complaint in the New York State Supreme Court, Nassau County, alleging virtually the same causes of action as contained in the Verified Complaint. Houbigant is not named as a party therein and, Unilex is named as a defendant, in addition to the non-debtor defendants named in the Verified Complaint. Promptly upon learning of the pendency of that action, debtor commenced an adversary proceeding in this court pursuant to §§ 362(a)(3) and 105 of the Code and Bankruptcy Rules 7001 and 7065 to enjoin its prosecution as to Sherman and Massironi. That litigation was settled when Claimants consented to that injunction, without prejudice to their right to argue later that the injunction should be modified or vacated.

*Discussion*

 Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Rule 56(c) states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505,

2510, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The substantive law governing the case identifies which facts are material to a determination of a summary judgment motion. However "[w]hile the materiality determination rests on substantive law, it is the substantive law's identification of which facts are crucial and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510. Only disputes over outcome determinative facts under governing law preclude the entry of summary judgment. *Id.* "[T]he mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985) (per curiam). In assessing the merits of a summary judgment motion, the court must view the record in the light most favorable to the non-moving party. *See Nat'l Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989); *Leberman v. John Blair & Co.,* 880 F.2d 1555, 1559 (2d Cir.1989); *Lund's Inc. v. Chemical Bank,* 870 F.2d 840, 844 (2d Cir.1989). The court's function is to determine "[w]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Quarles v. General Motors Corp.,* 758 F.2d at 840; *see also Celotex Corp. v. Catrett,* 477 U.S. at 327, 106 S.Ct. at 2555 (Rule 56 is intended to implement the rights of litigants to demonstrate prior to trial that claims "have no factual basis"); *Heyman v. Commerce Industry Ins. Co.* 524 F.2d 1317, 1320 (2d Cir.1975) ("on a motion for summary judgment the court cannot try issues of fact; it can only determine whether there are issues to be tried"). Movant must prove that no material facts are in dispute. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Heyman v. Commerce & Industry Co.,* 524 F.2d at 1319. "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the non-moving party's claim." *Goenaga v. March of Dimes,* 51 F.3d 14, 18 (2d Cir.1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552). Thereafter, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.,* 477 U.S. at 250, 106 S.Ct. at 2511. The evidence adduced must be sufficient for a jury to return a verdict in favor of the non-moving party. Accordingly, "if the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.*

The Verified Complaint purports to allege causes of action for: defamation (Verified Complaint ¶¶ 29–34); conspiracy (Verified Complaint ¶¶ 35–38); fraud (Verified Complaint ¶¶ 39–46); tortious interference with contractual and business relations (Verified Complaint ¶¶ 47–53); and injunctive relief (Verified Complaint ¶¶ 54–57). Claimants maintain that they have been damaged in the sum of $6,413,000.00, in part due to losses occasioned by their inability to sell their Raffinee and Chantilly fragrances at a profit, or even at cost. *See* Verified Complaint Ex. B. Debtor submitted affidavits from Michael Sherman, and Luigi Massironi in support of the motion. Claimants submitted affidavits from Brian Appel, David Reiner, Jack Giuliano, Bernard Rosenblum, Harold Schiff, and Peter Lucarelli in opposition to the motion. Both parties submitted Local Rule 13(h) Statements of Undisputed Facts.

Claimants argue first that this motion should be denied because they have not had the opportunity to obtain reasonable discovery. *See* Atlantis' Memorandum Of Law To Houbigant, Inc.'s Motion For Summary Judgment ("Memorandum") at pp. 12–13. They contend that Houbigant refused to allow Luigi Massironi to be deposed and that it has failed to produce documents responsive to their informal document request. *Id.* at 13–14. In a summary judgment motion, "the nonmoving party must have 'had the opportunity to discover information that it essential to his opposition' to the motion for summary judgment." *Trebor Sportswear Co. v. Limited Stores, Inc.,* 865 F.2d 506, 511 (2d Cir.1989) (quoting *Anderson v. Liberty Lob-*

*by, Inc.*, 477 U.S. at 250 n. 5, 106 S.Ct. at 2511 n. 5). That party "should not be 'railroaded' into his offer of proof in opposition to summary judgment." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. at 326, 106 S.Ct. at 2554–55). Federal Rule of Civil Procedure 56(f) is calculated to avoid such a result. It states that "[s]hould it appear from the affidavits of the party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Fed.R.Civ.P. 56(f). Although Claimants failed to cite the statute, we interpret their argument as one for relief under Rule 56(f). The affidavits submitted by Claimants do not discuss the alleged lack of discovery. Claimants address those issues in a conclusory, summary fashion in their Memorandum. However, a legal memorandum is no substitute for a Rule 56(f) affidavit, and Claimants' failure to support their assertions with sworn testimony, *per se*, is one basis for rejecting them. *See Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 926 (2d Cir.1985) (citing cases).

■ Moreover, Claimants' have had a reasonable opportunity to conduct discovery and have not been precluded from deposing Massironi or obtaining documents from debtor. From the outset of this litigation, debtor has contended that the Claim lacks merit and that its objection to the Claim should be resolved by means of a summary judgment motion. The February 15 objection foreshadowed this motion by raising the same issues and making many of the arguments advanced by debtor herein. Even with the clear signal that debtor would promptly seek a determination of the merits of the Claim, and our ruling during the November 17 hearing, Claimants never sought to depose Massironi. Claimants' only formal discovery request was embodied in the fifty-two interrogatories they served on debtor on or about February 24, 1995. Pursuant to a motion by debtor argued and resolved on March 30, 1995, and by order dated May 15, 1995, we struck those interrogatories as violating

Bankruptcy Rules 7026, and 7033, and Local Bankruptcy Rule 14. That order also stayed discovery pending resolution of the summary judgment motion. Claimants objected to our staying discovery solely on the grounds that debtor had failed to produce any documents in response to their informal document request. During the hearing on the motion, and as reflected in the May 15 order, the objection was resolved when debtor agreed to produce the documents it believed were responsive to the request. Claimants argue that "Houbigant represented to the Court that they would provide a reasonable response to [Claimants' informal document] request, but instead objected to each and every document request and provided a paucity of documents which clearly demonstrates bad faith...." Memorandum p. 13. Those conclusory allegations do not provide "facts essential to justify [Claimants'] opposition" to the summary judgment motion. *See* Fed.R.Civ.P. 56(f). For example, they have not demonstrated that debtor's objections to the document request lack merit or were asserted in bad faith. Indeed prior to our receipt of the Memorandum we were unaware of debtor's alleged failure to produce documents. Likewise, prior to our receipt of the Memorandum, Claimants had not argued that they had been denied the right to depose Massironi. Since the November 17 conference, Claimants have not sought leave to depose him. Claimants have not established that they were denied discovery. Their conclusory assertions do not bar our review of the merits of this motion. *See Over The Road Drivers Inc. v. Transport Insurance Co.*, 637 F.2d 816, 821 (1st Cir.1980). Claimants misplace their reliance on *Schering Corp. v. Home Insurance Co.*, 712 F.2d 4 (2d Cir.1983). There the court reversed a grant of summary judgment to plaintiff in part because it found that the district court had erred in staying discovery and thereby preventing defendant from completing its discovery prior to the submission of the summary judgment motion. Plaintiff had obtained summary judgment in the district court as to the meaning of certain terms in the insurance agreement between the parties. *Id.* at 8. At the time that summary

judgment was granted, defendant's request for documents probative of plaintiff's understanding and interpretation of that agreement was outstanding. *Id.* at 10. Those documents had been identified in letters produced by plaintiff. *Id.* The court found that the district court erred in staying discovery because the documents were relevant to a determination of the matters raised in the summary judgment motion. *Id.* In contrast, the May 15 order did not interrupt, terminate, or otherwise interfere with an open discovery request. Further, as discussed below, the discovery Claimants seek is not calculated to disclose information substantiating a genuine issue of material fact precluding summary judgment. Accordingly, *Schering* is inapposite.[8]

■ Claimants contend that they should be permitted to question Massironi about his allegedly defamatory statements regarding the quality of Atlantis' goods. *See* Memorandum p. 14. Massironi denies ever making any statement about the quality of Atlantis' product. *See* Massironi Aff. ¶¶ 8–9. In challenging that assertion, Claimants rest solely on the Giuliano Affidavit. Jack Giuliano is an officer of an entity known as ACB Mercantile, Inc. ("ACB"), which, together with other defendants, is being sued by Houbigant in the United States District Court for the Southern District of New York, over, among other things, alleged violations of the Lanham Act, 15 U.S.C. § 1125(a). More problematic for Claimants than Giuliano's interest in the outcome of this matter, is the lack of substance to his affidavit. He attests to "conversations with Luigi Massironi regarding the inventory of Chantilly and Raffinee fragrances in the possession of Brian Appel," Giuliano Aff. ¶ 2, and that Massironi advised him that "Brian Appel's inventory was sourced from David Reiner and not Houbigant, Inc. and that the goods were substandard and diluted." *Id.* Massironi denies that

allegation. Massironi Reply Aff. ¶ 16. From that, Atlantis maintains "that Mr. Massironi made statements to a great many people in the industry disparaging the quality of Atlantis' goods" and that he "is in possession of information essential to a determination of this case and Atlantis is entitled to develop the record in this regard." Memorandum p. 14. Giuliano provides no particulars of the alleged communications: he fails to state when or where the conversations occurred, whether they were in-person or over the telephone, who initiated the contacts, and/or the circumstances giving rise to, or surrounding the alleged communications. His vague, unsupported and apparently interested testimony is insufficient either to call Massironi's denial into question or provide a reason for denying the motion in favor of according them additional discovery.

■ Claimants also argue that they must depose Massironi on matters relating to Unilex' purchase of allegedly defective product from Houbigant, which Atlantis contends it then purchased from Unilex. In his affidavit, David Reiner, as Managing Director of Unilex, testifies that he met with Massironi on March 18, 1993 at a hotel in London, England. *See* Reiner Aff. p. 1.[9] He goes on to describe the events leading to an agreement between Unilex and Houbigant France (not the debtor) for Houbigant France to supply Unilex with foreign sourced product. Reiner Aff. pp. 1–2. Among other things, he also describes the events leading to an agreement among Houbigant U.K. (not the debtor) and Unilex, to supply Unilex with foreign sourced product for bottling and packaging in London, England. Reiner Aff. p. 2. Those allegations purport to bear on Claimants' contention that they were defrauded by debtor. However, as discussed below, even assuming, *arguendo,* the truth of those allegations, they do not support Atlantis' claim that it was defrauded by Houbigant. For example, the

---

8. During argument of this motion, Claimants suggested they had not sought to depose Massironi because discovery was stayed when the summary judgment motion was filed. Although that is the rule in actions brought pursuant to New York's Civil Practice Law and Rules, *see* CPLR Rule 3214(b), it is not so under the Federal Rules of Civil Procedure. In any event, as noted,

Claimants were accorded all of the discovery they maintained they required, i.e. document production, and failed to challenge the adequacy of debtor's response.

9. "Reiner Aff." means the affidavit of David Reiner sworn to May 5, 1995, and submitted in opposition to the summary judgment motion.

evidence reveals that debtor did not misrepresent any fact to Reiner or Claimants. Claimants' have not demonstrated that the discovery they seek is calculated to disclose a genuine issue of fact precluding summary judgment. That is an additional basis for denying them relief under Rule 56(f). *See, e.g., Shavrnoch v. Clark Oil & Refining Corp.,* 726 F.2d 291, 294 (6th Cir.1984); *Mid–South Grizzlies v. National Football League,* 720 F.2d 772, 780 n. 4 (3d Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984); *Gray v. Udevitz* 656 F.2d 588 (10th Cir.1981); *THI–Hawaii, Inc. v. First Commerce Financial Corp.,* 627 F.2d 991 (9th Cir.1980).

■ Claimants argue that because resolution of the Claim's merits implicates issues of knowledge, intent and motive, we must conduct a trial. *See* Memorandum pp. 16–17. They rely exclusively on *Schoenbaum v. Firstbrook,* 405 F.2d 215 (2d Cir.1968), *cert. denied,* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969). That case involved a stockholder's derivative action brought on behalf of Banft Oil Ltd. *Id.* at 217. In substance, plaintiff alleged that defendants knowingly sold shares of Banft stock at vastly inadequate prices to enrich themselves at the expense of Banft's shareholders. *Id.* at 217–18. Among the issues considered on appeal was whether the district court erred in refusing to accord plaintiff discovery and simultaneously granting summary judgment against plaintiff. *Id.* at 218. Various affidavits were submitted on defendant's behalf in support of its summary judgment motion. The court stated that "summary judgment should not ordinarily be granted where the facts alleged by the plaintiff provide a ground for recovery, at least not without allowing discovery in order to provide plaintiff the possibility of counteracting the effect of defendant's affidavits." *Id.* The court found that the allegations in the Complaint had sufficient factual basis "to require at least that the plaintiff be permitted through discovery to develop the evidence to counter defendants' affidavits." *Id.* The court stated that when stockholder's derivative actions involve disputed issues of knowledge, intent and motive "summary judgment cannot be granted even after discovery has been had."

*Id.* Contrary to Claimants' assertions, the affidavits do not reveal disputed issues of knowledge, intent or motive. As such, this motion is ripe for resolution and *Schoenbaum* is inapposite. Likewise, Claimants misplace their reliance on 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane *Federal Practice and Procedure* § 2726 (2d ed. 1983). *See* Memorandum p. 16. That section discusses the utility of summary judgment motions when there are doubts as to the credibility of one or more of movant's affiants. That discussion is irrelevant because the credibility of Sherman and Massironi has not been challenged with concrete and admissible evidence. Finally, Claimants argue that because Houbigant's intent is relevant to the question of damages, we cannot resolve the merits of the Claim without a jury trial. *Id.* As explained below, we find no merit to any of the causes of action alleged in the Verified Complaint. As such, the question of damages is moot.

### *First Cause of Action*

■ Under New York law, the elements of a cause of action for libel are: a false statement of and concerning plaintiff, publication to a third party, fault depending on the status of the libeled party and special harm or *per se* actionability. *See Church of Scientology Int'l v. Eli Lilly & Co.,* 778 F.Supp. 661, 666 (S.D.N.Y.1991). Atlantis contends that the following portion of the Notice was defamatory:

> Please be aware that there are rogue enterprises attempting to profit by selling grey-market, off size, diluted, sub-standard, non-standard, foreign sourced and "knock off" merchandise that may resemble, but are not products of Houbigant, Inc.

*See* Appel Aff. Ex. A. Houbigant denies that the Notice was "of and concerning" Atlantis. Claimants must prove that fact. *E.g., Julian v. American Business Consultants,* 2 N.Y.2d 1, 18, 155 N.Y.S.2d 1, 16, 137 N.E.2d 1, 12 (N.Y.1956); *Allen v. Gordon,* 86 A.D.2d 514, 446 N.Y.S.2d 48, 49 (N.Y.), *aff'd,* 56 N.Y.2d 780, 452 N.Y.S.2d 25, 437 N.E.2d 284 (N.Y. 1982). They argue that the jury, not the

court, determines whether the "of and concerning" requirement has been met. However, "whether a complaint alleges facts sufficient to demonstrate a connection between the plaintiff and the alleged libel is a question for the court." *Cardone v. Empire Blue Cross and Blue Shield,* 884 F.Supp. 838, 847 (S.D.N.Y.1995) (citing *Springer v. Viking Press,* 60 N.Y.2d 916, 917, 470 N.Y.S.2d 579, 580, 458 N.E.2d 1256, 1257 (N.Y.1982)); *Carlucci v. Poughkeepsie Newspapers, Inc.,* 57 N.Y.2d 883, 884, 456 N.Y.S.2d 44, 45, 442 N.E.2d 442, 443 (N.Y.1982)); *see also Church of Scientology Int'l v. Time Warner, Inc.,* 806 F.Supp. 1157, 1160 (S.D.N.Y.1992). The test is whether

> the libel designates the plaintiff in such a way as to let those who knew him understand that he was the person meant. It is not necessary that all the world should understand the libel; it is sufficient if those who knew the plaintiff can make out that he is the person meant.

*Fetler v. Houghton Mifflin Co.,* 364 F.2d 650, 651 (2d Cir.1966) (quoting *Miller v. Maxwell,* 16 Wend. 9, 18 (N.Y.Sup.Ct.1836)); *see also Dalbec v. Gentleman's Companion, Inc.,* 828 F.2d 921, 925 (2d Cir.1987) (quoting *Fetler v. Houghton Mifflin Co.,* 364 F.2d at 651). In *Cardone v. Empire Blue Cross and Blue Shield,* 884 F.Supp. at 846–47 the Court stated that the facts alleged in a libel cause of action must be "sufficient to demonstrate a reasonable connection between the plaintiff and the alleged libel." *See also Fetler v. Houghton Mifflin Co.,* 364 F.2d at 651 ("of and concerning" element is satisfied only if a jury could "reasonably conclude" that plaintiff was object of the alleged libel). The Notice does not name or indirectly refer to either Claimant. One reading the Notice could not reasonably conclude that it referred to Claimants. *See Cardone v. Empire Blue Cross and Blue Shield,* 884 F.Supp. at 847–48 (summary judgment dismissing defamation claim granted on grounds that the allegedly defamatory articles and press releases at issue failed to mention plaintiff's name); *Carlucci v. Poughkeepsie Newspapers, Inc.,* 57 N.Y.2d at 884, 456 N.Y.S.2d at 45, 442 N.E.2d at 443 (corporation's defamation claim dismissed because, among other things, allegedly libelous article did not name

corporation). In *De Maria v. Josephs,* 41 A.D.2d 655, 340 N.Y.S.2d 707 (N.Y.App.Div. 1973), the trial court dismissed plaintiff's libel claim for failing to state a claim upon which relief could be granted because the underlying writing did not name plaintiff. In reversing, the court stated that "it is unnecessary for the maintenance of a libel action that the plaintiff be specifically named in the publication" and that "the only question is whether plaintiff can establish that the article referred to him." *Id.* 340 N.Y.S.2d at 708. The court found that because the complaint detailed a course of direct dealing among the parties and a statement defamatory of plaintiff by defendant just prior to publication of the allegedly defamatory writing, among other things, it stated a claim for libel. *Id.* On the basis of *De Maria,* Claimants urge that because the Notice was printed shortly after Greene and Massironi made their allegedly defamatory remarks, reasonable persons would understand that the statement in the Notice referred to Atlantis. They misplace their reliance on *De Maria* for several reasons. *De Maria* did not hold that plaintiff was entitled to judgment on his defamation claim. As noted, the limited focus was the adequacy of the pleadings. Moreover, Greene is not debtor's employee, *see* Sherman Aff. ¶ 41, Massironi Aff. ¶ 10, and debtor and Atlantis have not had a course of dealing with one another. *See* Sherman Aff. ¶¶ 43–44; Massironi Aff. ¶ 12. Finally, as previously discussed, we attach no weight to Giuliano's vague contentions regarding his purported conversations with Massironi. Assuming *arguendo,* Massironi in fact made the statements attributed to him by Giuliano, they fail to support a defamation cause of action because Claimants have substantiated only that Massironi made the statement to Giuliano. "One who makes a defamatory statement is not responsible for its recommunication without his authority or request by another over whom he has no control." *Hoffman v. Landers,* 146 A.D.2d 744, 537 N.Y.S.2d 228, 231 (N.Y.App.Div.1989) (modifying denial of defendant's motion for summary judgment; granting summary judgment dismissing first cause of action based upon defamatory statement in published arti-

cle because statement was generated by reporter not by defendant, thus the statement was not in defendant's own words, and defendant had no control over the reporter's published words).

■■■ Claimants also contend that the Notice was "of and concerning" Atlantis because people who know Atlantis understood the Notice to refer to it. They point to letters allegedly sent to Appel by two of Atlantis' customers, Common Scents, Inc. and Kennys, *see* Appel Aff. Exs. H and I, and portions of the Rosenbaum and Schiff affidavits. *See* Appel Aff. Exs. E and F. Debtor objects to the admissibility of that evidence on hearsay grounds. A non-moving party "cannot rely on inadmissible hearsay in opposing a motion for summary judgment". *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d at 924; *see also Trebor Sportswear Co., Inc. v. Limited Stores, Inc.*, 865 F.2d at 509 (to survive a motion for summary judgment, non-moving party must "identify sufficient admissible evidence . . . so as to demonstrate that there existed a genuine issue of material fact . . ."). Affidavits may be used to support or oppose summary judgment, provided they are "made on personal knowledge . . . set forth such facts as would be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify to the matter stated therein." Fed.R.Civ.P. 56(e). Hence, "letters, as such, are not proper." *Edward B. Marks Music Corp. v. Stasny Music Corp.*, 1 F.R.D. 720, 721 (S.D.N.Y.1941). To be admissible, "documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane *Federal Practice and Procedure* § 2722 (2d ed. 1983) (footnotes omitted). If a letter is submitted for consideration, it "must be attached to an affidavit and authenticated by its author in the affidavit or a deposition." *Id.* (footnote omitted). The letters allegedly mailed to Appel by Common Scents and Kennys are merely annexed to Appel's Affidavit. They are inadmissible hearsay which cannot support Claimants' objection to this motion. *See, e.g., Edward B.*

*Marks Music Corp. v. Stasny Music Corp.*, 1 F.R.D. at 721 (letters are inadmissible without an affidavit from their author); *Interamerican Refining Corp. v. Texaco Maracaibo, Inc.*, 307 F.Supp. 1291, 1300 (D.Del.1970) (same). In their identical affidavits, Rosenblum and Schiff state that as early as May 20, 1994, they "heard from marketplace sources, including Jack Giuliano, that the Chantilly and Raffinee goods being sold by Atlantis were believed to be substantial." *See* Rosenblum Aff. ¶ 2; Schiff Aff. ¶ 2. Those statements likewise constitute inadmissible hearsay. *See, e.g., Caldwell v. American Basketball Ass'n*, 825 F.Supp. 558, 571–72 (S.D.N.Y.1993) (affidavit and article constituting hearsay not falling within on of the exceptions under Fed.R.Evid. 803, inadmissible as evidence opposing summary judgment motion); *see also Trebor Sportswear Co. v. Limited Stores, Inc.*, 865 F.2d at 510 (documents evidencing settlement negotiations barred under Fed.R.Evid. 408).

■■■ Claimants' argument fails for reasons other than a lack of proof. In *Cardone v. Empire Blue Cross and Blue Shield*, 884 F.Supp. at 841 the former chairman of Empire Blue Cross and Blue Shield ("Empire") sued Empire and its directors for defamation, among other things. Cardone had been the recipient of much criticism in the press during his tenure as defendant's CEO for his extravagance and confrontational style; he had also been accused of withholding key information from the board of directors. *Id.* at 842. The board accepted his resignation as Chairman and CEO on May 20, 1993. *Id.* In June 1993, the New York Times confronted the new CEO with a charge that Empire's internal financial reports differed from those filed with the New York State Insurance Department. *Id.* From June 16 through June 18, 1993, the company issued press releases or made statements to the public through newspapers that disclosed the existence of a discrepancy. Like Claimants, Cardone argued *inter alia* that his defamation claim was valid if those who knew him would, upon reading the allegedly libelous statement, understand that he was the target of the statement. *Id.* at 847–48. The court rejected that contention. "These statements

can be found to concern Cardone only if those who know Cardone could conclude that as CEO and Chairman he was directly responsible for all defalcations of his subordinates. It may be that as captain of Empire he had ultimate responsibility, but that does not mean he was libeled when the acts of other Empire employees were impugned." *Id.* Even assuming, *arguendo,* Claimants could adduce admissible evidence consistent in substance with the inadmissible letters and affidavit testimony noted above, on the basis of *Cardone,* summary judgment dismissing this cause of action nonetheless would be appropriate. The thrust of the Rosenblum and Schiff Affidavits, as well as portions of the Appel Affidavit, *see* Appel Aff. ¶ 15, is that more than one month prior to publication of the Notice, the marketplace perceived Atlantis' product as diluted and sub-standard and that each of them knew it. Only on the basis of that information could one reasonably conclude that the Notice might refer to Claimants. As such, the Notice, in and of itself, cannot reasonably be construed as being "of and concerning" Claimants. Moreover, that evidence completely undermines any argument that the Notice caused the losses allegedly suffered by Claimants.

 Alternatively, Atlantis contends that it is entitled to relief because there are only a few large scale distributors of Chantilly and Raffinee. *See* Memorandum pp. 20–21. Although an individual claimant is generally barred from recovering for defamation where the allegedly defamatory statement targets a group of which the claimant is a member, *see Brady v. Ottaway Newspapers, Inc.,* 84 A.D.2d 226, 445 N.Y.S.2d 786, 788–89 (N.Y.App.Div.1981), the claimant is entitled to relief if "(a) the group . . . is so small that the matter can reasonably be understood to refer to the member, or (b) the circumstances of the publication reasonably give rise to the conclusion that there is particular reference to the member." Restatement (Second) of Torts § 564A (1977). However, a plaintiff's defamation claim is insufficient if the alleged defamatory statement referenced the plaintiff solely as a member of the group because that factor, without more, does not meet the "of and concerning" requirement

necessary to plead defamation. *See Church of Scientology, Int'l v. Time Warner, Inc.,* 806 F.Supp. at 1160; *see also New York Times Co. v. Sullivan,* 376 U.S. 254, 288–92, 84 S.Ct. 710, 730–32, 11 L.Ed.2d 686 (1964) (holding that impersonal attack on police force cannot constitutionally in and of itself be viewed as evidence of libel against official in control of government agency; use of pronoun "they" and references to acts by police insufficient to support conclusion that police commissioner was personally involved in those acts).

 Under the first exception to the group defamation doctrine, Claimants must show that they belong to a defamed class that is small enough for the public to infer that the Notice applied to all of its members. *See Restatement (Second) of Torts* § 564A (1977). Under New York law, the group must be limited such that "reference to the individual plaintiff reasonably follows from the statement. . . ." *Brady v. Ottaway Newspapers, Inc.,* 445 N.Y.S.2d at 790. In determining whether the group is so limited, courts consider a variety of factors in addition to the group's size. For example, in *Brady* the plaintiffs, members of a municipal police force, sued the local newspaper for libel when an editor, commenting upon past events and misdeeds which had led to an investigation of the department and an installation of a new supervisory system, made the following statement: "We said at the time, and we still believe, that the entire department was under a cloud. It is inconceivable to us that so much misconduct could have taken place without the guilty knowledge of the unindicted members of the department. If so, they were all accessories after the fact, if not before and during." *Id.* 445 N.Y.S.2d at 787. Twenty-seven of the approximately fifty-three members of the police force who had not been indicted sued the owner and certain individuals connected with the newspaper alleging the editor's statement was libelous. *Id.* 445 N.Y.S.2d at 788. On appeal the appellate division concluded that the group was sufficiently limited to come within the exception to the group defamation doctrine and that the plaintiffs stated a claim for defamation as a matter of law.

*Id.* 445 N.Y.S.2d at 795. Among the factors cited by the court were that the group was limited to the unindicted officers; that it was a highly visible group into which entry was limited; that the statement was sufficiently specific to create the inference that it applied to the individual members of the group; that the group was a locally prominent group easily identifiable by the public; and that the newspaper dedicated two editorials to this topic, one seven years after the original allegations of misconduct were publicized, which renewed public scrutiny on the group and which gave rise to the inference that the newspaper had access to special information, making it seem less likely that the statement was merely an inexact generalization. *Id.* 445 N.Y.S.2d at 792–95. Similarly, in *Neiman–Marcus v. Lait,* 13 F.R.D. 311 (S.D.N.Y.1952), the court's interpretation of whether the group was sufficiently small to create the inference that the allegedly defamatory statement referred to particular individuals rather than the group was informed by both the size of the group and the nature of the statements. There, 15 of 25 salesmen and 30 of 382 saleswomen of Neiman Marcus's Dallas, Texas store, among others, sued the authors of a book which proclaimed that most of the salesmen were "fairies" and that some of the salesgirls were "call-girls". *Id.* at 313–14. The court found that the individual salesmen did have causes of action for libel because of the size of the group and the nature of the description, *i.e.,* that "most" were homosexual. *Id.* at 315–16. However, the court found that the individual saleswomen did not have causes of action for libel because the size of the group was too large and the statement too nonspecific because the statement described only "some" of the 382 individuals as "call-girls". *Id.* at 316.

In *National Nutritional Foods Ass'n v. Whelan,* 492 F.Supp. 374 (S.D.N.Y.1980), the court granted defendants' motion for summary judgment where it found that the group allegedly defamed consisted of potentially thousands of individuals engaged in the health food business, and was thus too large for the references made to reasonably be ascribed to any particular individuals. *Id.* at 380–81. The defendants, a nutritionist and a doctor specializing in nutrition, published a

statement in a local newspaper and a national magazine that in their view health food was unhealthy and overpriced, and that some in the industry were "quacks" or practiced "quackery". *Id.* at 380. The court also found that the statement was insufficiently specific to be interpreted as a statement about particular members of the industry. *Id.*

Claimants argue that contrary to Sherman's testimony that the Notice referred to potentially hundreds or thousands of individuals and entities who might be in a position to possess and distribute unauthorized merchandise, *see* Sherman Aff. ¶¶ 34–35, there are only a few large scale distributors of Chantilly and Raffinee. Even assuming *arguendo* that Claimants are correct, the Notice references more than just those brands; it also mentions Lutece, French–Vanilla, & Demi–Jour brands, among others. Moreover, no reference is made to any specific brand in describing the disfavored "knock-off" merchandise. Neither are the "rogue enterprises" mentioned in the Notice described as large distributors. Thus even if Atlantis were correct about the small number of distributors of Chantilly and Raffinee, the "group" identified in the advertisement exceeds those entities and potentially includes many others involved in distribution of the other brands. The group described thus appears neither sufficiently small nor sufficiently well defined that a reader of the Notice could reasonably infer that Atlantis was a member of that group. *See National Nutritional Foods Ass'n v. Whelan,* 492 F.Supp. at 380–81. Moreover, as the Sherman Affidavit states, there are several categories of entities and individuals which could potentially be involved in distributing the goods mentioned in the Notice: grey-marketers, re-marketers, diverters, close-out businesses, fragrance wholesalers, and "suitcase traders" who obtain product overseas, and also the entities which buy merchandise from these entities and resell it. Sherman Aff. ¶ 35. Not all of these entities are exclusively involved in the fragrance industry. *Id.* Claimants' attempts to distinguish *Whelan* are off mark. The distinction it draws, that the defendants in *Whelan* had criticized the claims and prac-

tices involved in the marketing and sale of health food generally, *see* Memorandum pp. 21–22, while the Notice refers to a specific subset of the fragrance industry, is undercut by the fact that the Notice does not refer solely to the two brands Atlantis distributed, but names three additional brands and makes general reference to other Houbigant products. The size of the group potentially affected by the Notice is neither small nor identifiable enough to satisfy the "of and concerning" requirement and come within the first exception to the group defamation doctrine.

▉ Furthermore, the Notice is not sufficiently specific to target Atlantis as a member of the group selling "knock-off" or "non-standard" merchandise, and thus trigger the second exception to the group defamation doctrine. "Where the group disparaged is a large one, absent circumstances pointing to a particular plaintiff as the person defamed, no individual member has a cause of action." *National Nutritional Foods Ass'n v. Whelan*, 492 F.Supp. at 380. In *Church of Scientology Int'l v. Time Warner, Inc.*, 806 F.Supp. 1157 (S.D.N.Y.1992), Church of Scientology, Inc. ("CSI") contended six passages in an article in Time Magazine contained allegedly defamatory statements which were sufficiently specific to be of and concerning CSI and to overcome the group libel doctrine. *Id.* at 1158–59. The court ultimately concluded that with reference to four of the six passages, CSI's complaint was sufficient to withstand defendant's motion to dismiss. Those included references to "church" activities, because CSI had been identified as the "mother church"; references made to actions by individuals "ordered" by the church; references made to the Vancouver Stock Exchange as a "scam capital of the world" as the source of funds for the "Los Angeles-based church"; and references made to activities of agents of the "church" in connection with the suicide of one of its members. *See id.* at 1161–64. However, the court did not find that a statement describing the activities of a local "Dianetics center" or that a statement describing the income of "one of the cult's many entities—the Church of Spiritual Technology—" made sufficient reference to CSI to be "of and

concerning" the plaintiff because the court saw no reasonable connection between those particular entities and CSI. *Id.* at 1164. In substance, Claimants argue that on the basis of unspecified "extrinsic evidence", the general reference in the Notice to enterprises selling products that resemble but are not debtor's product, coupled with the advice therein that debtor sold Chantilly and Raffinee brands, is sufficient to identify Atlantis. *See* Memorandum pp. 20–22. We find no merit to that contention.

▉ Truth is an absolute defense to a civil defamation action. *See, e.g., Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 300 (2d Cir.1986), *cert. denied*, 479 U.S. 1091, 107 S.Ct. 1303, 94 L.Ed.2d 158 (1987); *Commonwealth Motor Parts, Ltd. v. Bank of Nova Scotia*, 44 A.D.2d 375, 355 N.Y.S.2d 138, 141 (N.Y.App.Div.1974), *aff'd*, 37 N.Y.2d 824, 377 N.Y.S.2d 482, 339 N.E.2d 888 (N.Y.1975). To the extent the Claim is predicated on the Notice, debtor has an absolute defense. The Notice alerted the public about the sale of grey market, off size, diluted, sub-standard, non-standard and knock-off products "that may resemble, but are not the products of Houbigant, Inc.". Appel Aff. Ex. A. Sherman's affidavit details the existence of those kinds of products. *See* Sherman Aff. ¶¶ 17–23. Further, Claimants effectively acknowledge that their Chantilly and Raffinee fragrances—acquired from Unilex—was purchased from debtor's foreign subsidiaries, and was foreign sourced. *See* Appel Aff. Exs. J, K; Reiner Aff. pp. 1–2. Thus, at a minimum the Notice was truthful as to Atlantis. Claimants argue that the Notice was not truthful because Atlantis is not a "rogue enterprise". *See* Memorandum p. 23. However, the term "rogue" is an expression of opinion not actionable as a defamation. *See Steinhilber v. Alphonse*, 68 N.Y.2d 283, 295, 508 N.Y.S.2d 901, 907, 501 N.E.2d 550, 556 (N.Y.1986) (calling an employee a "scab" who "sucks" is opinion and not actionable).

▉ Finally, Atlantis alleges that Sherman and Massironi made disparaging comments about Atlantis' inventory to the trade which allegedly constitute slander *per se. See* Memorandum pp. 24–25. New York

CPLR § 3016(a) states that "in an action for libel or slander, the particular words complained of shall be set forth in the complaint. ..." In opposition to this motion, Claimants point to statements allegedly made by Greene to the trade, *see* Appel Aff. ¶ 11; Lucarelli Aff. ¶ 2, as evidence of the libel and slander.[10] However, debtor's undisputed evidence establishes (1) that Greene is not, was not and never has been an officer, director, employee, agent or representative of Houbigant and (2) Greene was not under Houbigant's, Sherman's or Massironi's control when he allegedly made the statements contained in the Appel and Lucarelli affidavits. *See* Sherman Aff. ¶¶ 40–41; Massironi Aff. ¶¶ 9–16. Claimants also rely on the vague and conclusory testimony of Giuliano regarding his alleged conversations with Massironi. As already noted, as matters of fact and law, those assertions do not support a claim of slander *per se*.

### Second Cause of Action

 Claimants contend that Houbigant, PPI, Kidd Kamm & Company, among others, "consulted among themselves, conspired and agreed to publish to the fragrance trade that Atlantis' stock of Chantilly and Rafinee fragrances was sub-standard and otherwise unsuitable for sale." Verified Complaint ¶ 36. It maintains that the "purpose for publishing such statements was to diminish Atlantis' ability to sell its stock and therefore compete with PPI's stock", Verified Complaint ¶ 37, and that defendants "conspired to injure the plaintiffs and their conduct did in fact cause substantial injury to Atlantis." Verified Complaint ¶ 38. Claimants state that Houbigant is liable for the allegedly tortious acts of Sean Greene and PPI "inasmuch as Houbigant and PPI conspired to libel and slander Atlantis. ..." Memorandum p. 26. Conspiracy to commit a tort is not a cognizable cause of action. *See Durante Bros. & Sons, Inc. v. Flushing National Bank.,* 755 F.2d 239, 251 (2d Cir.), *cert. denied,* 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985); *Ahmed v. National*

*Bank of Pakistan,* 572 F.Supp. 550, 554–55 (S.D.N.Y.1983); *ABKCO Industries, Inc. v. Lennon,* 52 A.D.2d 435, 384 N.Y.S.2d 781, 784 (N.Y.App.Div.1976). "Allegations of conspiracy are permitted only to connect the conduct of separate defendants within an otherwise actionable tort." *Gouldsbury v. Dan's Supreme Supermarket, Inc.,* 154 A.D.2d 509, 546 N.Y.S.2d 379, 381 (N.Y.App. Div.1989). Atlantis has not alleged that defendants participated in a separate, actionable tort. This action is merely a rehash of the allegations contained in the first cause of action. As such, it must be dismissed. *See Ahmed v. National Bank of Pakistan,* 572 F.Supp. at 555; *Polyglycoat Corp. v. C.P.C. Distributors, Inc.,* 534 F.Supp. 200, 204 (S.D.N.Y.1982).

### Third Cause of Action

 The elements of a claim for fraud under New York law are (1) a representation of (2) an existing material fact (3) which is false (4) made with an intent to induce another party to rely upon it (5) justifiable reliance thereon and (6) damages. *See Callas v. Eisenberg,* 192 A.D.2d 349, 595 N.Y.S.2d 775, 776 (N.Y.App.Div.1993); *Jo Ann Homes at Bellmore, Inc. v. Dworetz,* 25 N.Y.2d 112, 119, 250 N.E.2d 214, 217, 302 N.Y.S.2d 799, 803 (N.Y.1969). Claimants allege that Houbigant supplied Unilex with sub-standard products and Unilex, in turn, sold "diluted" inventory to Atlantis. *See* Verified Complaint ¶¶ 40–45. The fraud alleged is that "Houbigant knowingly caused 'diluted' fragrances to be sold to Atlantis, causing Atlantis to incur damages [in the sum of $6,413,-000.00]." Verified Complaint ¶ 46. Neither the Verified Complaint nor the affidavits submitted by Claimants in opposition to this motion specifies Houbigant's alleged material misrepresentation. Claimants argue that "Houbigant quite clearly represented to Unilex, Atlantis and the public that their Chantilly and Rafinee products are not diluted [at a time when they allegedly were diluted]." Memorandum p. 31. That conclusory allega-

10. Claimants also contend that they were "in the process of seeking to obtain discovery so that the words constituting the slander could be set forth with specificity." Memorandum p. 24. As not-

ed, that is an inaccurate statement of fact. Claimants have not been denied discovery on this issue, or any other matter relating to this motion.

tion does not satisfy the pleading requirements of Fed.R.Civ.P. 9(b), let alone sustain Claimants' burden of proving that Houbigant misrepresented a material fact.

██ Atlantis argues that it detrimentally relied upon Houbigant's alleged misrepresentation to Unilex because it understood from Unilex that Houbigant had assured the quality of goods in Unilex' possession and that it "would never have purchased the fragrances if they had known they were diluted." Memorandum p. 31. The testimony of Sherman and Massironi that Houbigant and Atlantis never had business dealings and that Houbigant made no representations directly to Atlantis is uncontested. Sherman Aff. ¶ 45; Massironi Aff. ¶¶ 12, 14; Massironi Reply Aff. ¶¶ 8–9. Moreover, Claimants' evidence demonstrates that Unilex dealt with Houbigant's foreign subsidiaries, not Houbigant. *See* Reiner Aff. pp. 1–2. Atlantis does not contend that it relied on a particular statement or representation by Houbigant. Claimants argue that "where representations are made to the public at large for the purpose of influencing the action of anyone who may act on those representations, a common law action for fraud lies in favor of [those] who acted in reliance on the misrepresentation." Memorandum p. 30. However, as noted, there is no evidence that debtor misrepresented any fact regarding the product purchased by Unilex. Moreover, neither case cited by Claimants supports their legal theory. In *Herz v. Thornwood Acres "D", Inc.,* 86 Misc.2d 53, 381 N.Y.S.2d 761 (N.Y.Just.Ct.1976), *aff'd,* 91 Misc.2d 130, 397 N.Y.S.2d 358 (N.Y.Sup.Ct.1977), homeowners brought an action to recover funds paid by them in remedying defects in the septic system at their home. The builder was among the defendants named in the complaint. After the house was constructed and the septic system was installed, the builder executed a "guaranty" of the system and filed it with the department of health. Plaintiffs purchased the home from the original owners. At that time, they were provided with a copy of the builder's guaranty. Shortly after taking possession, plaintiffs began to experience problems with the septic system. Upon investigation, plaintiffs learned that the system was not constructed as represented in the guaranty. Ultimately, they spent approximately $1300.00 repairing it. The court found that the builder knowingly misrepresented material facts about the septic system in the guaranty and that plaintiffs' were persons who were intended to rely on the guaranty. 381 N.Y.S.2d at 765. The court awarded plaintiffs $1300.00 in damages to redress the builder's fraud. The *Herz* court did not find the builder liable because the guaranty extended to the public at large. To the contrary, it found that plaintiffs were among the limited class of people at whom the guaranty was aimed, i.e., owners and prospective owners of the property. *Id.* Indeed, the court denied plaintiffs' request for punitive damages on the grounds that there was no fraud on the public. *Id.* ("The representations here were not aimed at the public generally, but at the limited class of persons who were the owners or prospective owners of this property."). *Young v. Robertshaw Controls Co.,* 104 A.D.2d 84, 481 N.Y.S.2d 891 (N.Y. 1984) is distinguishable because it is a products liability case. At common-law an action for fraud lay in favor of anyone acting upon "[m]isrepresentations of safety to the public at large, for the purpose of influencing the marketing of a product known to be defective." *City of New York v. Lead Indus. Ass'n,* 190 A.D.2d 173, 597 N.Y.S.2d 698, 700 (N.Y.1993). In *Robertshaw,* plaintiff's deceased spouse died from injuries suffered after a propane gas heater exploded. The explosion allegedly was caused by a defective valve manufactured by Robertshaw Controls Co. ("Robertshaw"). The issue before the court was whether the trial court had erred in authorizing plaintiff to amend her complaint to allege, among other things, causes of action for fraud against Robertshaw. On appeal Robertshaw argued that, as a matter of law, plaintiff could not state a claim of fraud against it. The court overruled that objection stating that

"[a]lthough generally nondisclosure or concealment alone does not equate to actionable fraud ... it is a principle of long standing that 'one who sells an article knowing it to be dangerous by reason of concealed defects is guilty of a wrong, without regard to the contract, and is lia-

ble in damages to any person, including one not in privity of contract with him, who suffers on injury by reason of his willful and fraudulent deceit and concealment.'"

481 N.Y.S.2d at 894 (citations omitted). *Robertshaw* does not support Claimants' third cause of action.

### Fourth Cause of Action

Atlantis contends that Houbigant's attempts to disparage its products tortiously interfered with Atlantis' contractual relations with "various retail stores". Verified Complaint ¶¶ 48–53. In doing so, Atlantis combines the torts of "interference with contractual relations" and "interference with prospective business relations" in one cause of action. We will treat them separately.

 Under New York law, to succeed on a claim for tortious interference with contractual relations, a plaintiff must demonstrate (1) the existence of a valid contract between plaintiff and a third party for a specific term; (2) defendant's knowledge of the contract; (3) defendant's intentional procurement of the breach; and (4) damages. *S & S Hotel Ventures Limited Partnership v. 777 S.H. Corp.*, 108 A.D.2d 351, 489 N.Y.S.2d 478, 480 (N.Y.1985); *Harold F. Shepherd Real Estate, Inc. v. Gibbs*, 169 A.D.2d 814, 565 N.Y.S.2d 182, 183–84 (N.Y.1991). The Verified Complaint fails to identify specific contracts interfered with by Houbigant, or to allege facts demonstrating that Houbigant had knowledge of the contracts. Those are fatal defects to Claimants' cause of action. *See Quail Ridge Assoc. v. Chemical Bank*, 162 A.D.2d 917, 558 N.Y.S.2d 655, 658 (N.Y. 1990) (affirming dismissal of claim for tortious interference with contractual relations on grounds that complaint failed to refer to any particular contract between plaintiff and a third party or that defendant was aware of and interfered with any such contract).

 Claimants contend that contracts for the sale of Chantilly and Raffinee with A. Rosenblum, Model Imperial and Kennys were breached as a result of the Notice. *See* Appel Aff. ¶ 6. However, as already noted, Claimants admit that there were rumors in the marketplace regarding the inferior nature of Atlantis' product more than one month prior to publication of the Notice. *See* Rosenblum Aff. ¶ 2; Schiff Aff. ¶ 2. To counter Sherman and Massironi's unqualified statements that each lacked knowledge of Atlantis' customers in June 1994, Claimants' state that "despite Houbigant's statements to the contrary, they did have knowledge of these contracts and [Claimants are] entitled to discovery to establish that fact." Memorandum p. 27. As support for that assertion, Claimants rely on the following statement by Appel:

> Both Mr. Massironi and Mr. Sherman allege that they had no knowledge of any contracts I had for the purchase of the Chantilly and Rafinee fragrances. This is simply untrue. At the very least, they were aware that Atlantis was selling the Chantilly and Rafinee fragrances to such entities as A. Rosenblum and Model Imperial. While I was negotiating with PPI for the repurchase of the Chantilly and Rafinee fragrances, they became aware that I had contracts with Bernie Rosenblum among others and PPI informed Luigi Massironi and Michael Sherman of this information.

*See* Appel Aff. ¶ 19. The party opposing a summary judgment motion may not rest upon mere conclusory allegations or denials. "Rather it is incumbent upon a defending party to set forth 'supporting arguments or facts in opposition to the motion.'" *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). "[T]he non-moving party must offer 'concrete evidence from which a reasonable juror could return a verdict in his favor'". *Greene v. Town of Blooming Grove*, 879 F.2d 1061, 1063 (2d Cir.1989) (quoting *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988), *cert. denied*, 502 U.S. 1005, 112 S.Ct. 639, 116 L.Ed.2d 657 (1991)). Appel's vague, conclusory and unsupported statements fall far short of that mark. Accordingly, the claim of tortious interference with contractual relations must be dismissed. *See Ferraro v. Finger Lakes Racing Assoc., Inc.,*

182 A.D.2d 1072, 583 N.Y.S.2d 66, 67–68 (N.Y.1992) ("defendant demonstrated its entitlement to judgment in its favor as a matter of law [dismissing cause of action for tortious interference with contract] by establishing that it had no knowledge of plaintiffs' contacts with owners of thoroughbred horses and did not procure their breach"); *Harold F. Shepherd Real Estate, Inc. v. Gibbs,* 565 N.Y.S.2d at 182–83 (reversing denial of summary judgment dismissing claim of tortious interference with contract where defendant had no knowledge of contract between plaintiff and third party); *Anderson Properties, Inc. v. Sawhill Tubular Division, Cyclops Corp.,* 149 A.D.2d 950, 540 N.Y.S.2d 82 (N.Y. 1989) (same); *see also Mautner Glick Corp. v. Edward Lee Cave, Inc.,* 157 A.D.2d 594, 550 N.Y.S.2d 341 (N.Y.1990) (lack of knowledge about existence of contract is fatal to interference with contractual relations claim).

▮▮▮▮▮ Under New York law, to prevail on a claim of tortious interference with business relations

a plaintiff is required to show 'the defendant's interference with business relations existing between the plaintiff and a third party, either with the sole purpose of harming the plaintiff or by means that are "dishonest, unfair or in any other way improper." ' [*Martin Ice Cream Co. v. Chipwich, Inc.,* 554 F.Supp. 933 (S.D.N.Y. 1983) ] (quoting *Robbins v. Ogden Corp.,* 490 F.Supp. 801, 811 (S.D.N.Y.1980)). If the defendant's interference is intended, at least in part, to advance its own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct. *Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.,* 614 F.2d 832, 838 (2d Cir.1980); *Strapex Corp. v. Metaverpa N.V.,* 607 F.Supp. 1047, 1050 (S.D.N.Y.1985).

*PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.,* 818 F.2d 266, 269 (2d Cir. 1987). Relying on Appel's affidavit, Claimants contend that Houbigant interfered with their relationships with A. Rosenblum, Model Imperial and Kennys. *See* Appel Aff. ¶ 6. As noted, Houbigant's uncontroverted evidence is that neither Sherman nor Massironi was aware of any of Atlantis' contracts in June 1994. *See* Sherman Aff. ¶ 23; Massiro-

ni Aff. ¶¶ 8–9. In and of itself, that is sufficient grounds for granting Houbigant summary judgment dismissing that cause of action. *See Croton River Club, Inc. v. Half Moon Bay Homeowners Ass'n, Inc. (In re Croton River Club),* 145 B.R. 185, 192 (Bankr.S.D.N.Y.1992), *aff'd* 162 B.R. 648 (S.D.N.Y.1993), *aff'd in part and modified in part,* 52 F.3d 41 (2d Cir.1995); *Frishberg v. Esprit de Corp.,* 778 F.Supp. 793, 804–05 (S.D.N.Y.1991), *aff'd,* 969 F.2d 1042 (2d Cir. 1992). Even assuming, *arguendo,* that Claimants could establish that Houbigant was aware of those agreements, an award of summary judgment in Houbigant's favor nonetheless would be appropriate because Claimants have failed to allege, let alone prove, that Houbigant acted solely to harm it, or acted by dishonest, unfair or improper means. *See Furgang v. JMK Building Corp.,* 183 A.D.2d 1062, 583 N.Y.S.2d 610, 612 (N.Y.1992); *West v. Mohawk Commercial Carpets,* 183 A.D.2d 182, 589 N.Y.S.2d 218, 220 (N.Y.1992).

▮▮▮ Apparently recognizing the defects in their pleadings, Claimants concede that Houbigant had a sufficient business justification for running the Notice, but argue—without adducing any evidence, or even attempting to do so—that Houbigant's conduct was "criminal or fraudulent" and that it "maliciously published to the industry that Atlantis was a rouge enterprise selling substandard and diluted goods." Memorandum p. 28. Those conclusory allegations suffer from the same deficiencies as Claimants' contentions regarding Houbigant's alleged interference with Atlantis' contracts. Because Claimants have failed to submit concrete evidence that Houbigant acted criminally or fraudulently in running the Notice, summary judgment dismissing this aspect of the Claim likewise is warranted. *See Nassau Diagnostic Imaging & Radiation Oncology Assocs., P.C. v. Winthrop–University Hosp.,* 197 A.D.2d 563, 602 N.Y.S.2d 650, 651 (N.Y.1993).

### Fifth Cause of Action

▮▮▮ Claimants seek an order permanently enjoining Houbigant from again publishing that "Atlantis' inventory is sub-standard or improper for any reason" and directing Houbigant "to publish a retraction of their absurd advertisements and to publish

to the trade and to the world that Atlantis lawfully possesses its [Chantilly and Raffinee] and other fragrances, that the fragrances are not 'diluted' or otherwise unsuitable for sale; and that they meet Houbigant's standards...." Verified Complaint ¶ 57. A permanent injunction shall issue under Fed.R.Civ.P. 65(a) if (i) plaintiff is successful on the merits of the claim; (iii) there is no available remedy at law; and (iii) the balance of equities favors granting such relief. *Travellers Int'l AG v. Trans World Airlines, Inc.,* 722 F.Supp. 1087, 1096 (S.D.N.Y.1989), *aff'd,* 41 F.3d 1570 (2d Cir. 1994). The Claim has no merit. Even assuming, *arguendo,* some portion had merit, Claimants have not demonstrated that they lack an adequate remedy at law. One way to prove the inadequacy of a legal remedy is to establish "irreparable harm". *See Travellers Int'l AG v. Trans World Airlines, Inc.,* 722 F.Supp. at 1096. That can be done by showing that the alleged damages are not susceptible to calculation. *See, e.g., Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) ("where money damages is adequate compensation a preliminary injunction will not issue"). Claimants' state that "[c]learly, regardless of the monetary damages paid to Atlantis, Atlantis will not be made whole unless Houbigant is enjoined from making any further statements to the industry. Atlantis' reputation has been severely damaged, in addition to the economic losses it has suffered." Memorandum p. 32. It has adduced no evidence substantiating those contentions, or that the Notice will be run again. *See Levin v. Harleston,* 966 F.2d 85, 90 (2d Cir.1992) (the requirement of irreparable harm will not be met "where there is no showing of any real or immediate threat that plaintiff will be wronged again".) In this light, it follows that the equities do not warrant granting the requested relief.

### Conclusion

Based on the foregoing, Houbigant's motion for summary judgment expunging the Claim is granted.

SETTLE ORDER.