COMMONWEALTH MOTOR PARTS LIMITED et al., Respondents-Appellants, *v.* BANK OF NOVA SCOTIA, Appellant-Respondent.

First Department, May 9, 1974.

*Matthew C. Gruskin* of counsel (*Shearman & Sterling,* attorneys), for appellant-respondent.

*Milton I. Stockton* for respondents-appellants.

MURPHY, J.   Both sides appeal from an order of Supreme Court granting in part defendant's summary judgment motion seeking dismissal of all four causes of action of plaintiffs' amended complaint.

The essential facts are not in dispute.  The corporate plaintiff (hereafter "Commonwealth") was organized under the laws of the Dominion of Canada, with its principal office in Toronto.   The individual plaintiff ("Gringorten") is its president.   Defendant is a bank chartered by the Bank Act of the Dominion of Canada and is authorized to transact business in this State.   For such purpose, it maintains a New York agency.

For some years prior to the event in issue, Commonwealth maintained checking accounts at one of defendant's Toronto branches and at the National Bank of North America ("National") branch in Merrick, Long Island.  It appears that National afforded Commonwealth the courtesy of drawing on uncollected funds.   Commonwealth took advantage of this informal arrangement by adopting the practice of depositing checks in its account at National drawn to cash on its account with defendant and then transmitting the necessary funds to cover such checks on the day they were presented for payment through defendant's New York agency.  Since the time interval between the encashment of a check at National and its presentment for payment in Toronto varied, generally, from three to six business days, the benefit of this arrangement to plaintiffs is manifest.

In apparent accordance with the above-described procedure Commonwealth, on August 2, 1968, deposited a $2,000 check, dated that day and drawn on defendant, in its account with National.   Following prior practice, Gringorten telephoned defendant's Toronto branch on August 16, 1968, the day the check was presented for payment, and was advised that there was only an $890 credit balance in Commonwealth's account. Accordingly, he allegedly deposited $1,800 with defendant's New

York agency and was assertedly assured by said agency that the fact of such deposit would be communicated by teletype to Toronto and immediate credit given. This promise was not fulfilled. When funds to cover the shortage failed to arrive by the close of banking business that day, the person in temporary charge of defendant's Toronto branch (though aware that Gringorten frequently arranged for fund transferral through the New York agency and despite the fact that no Commonwealth check had ever been returned for insufficient funds in the 25-year history of the account) felt obliged to dispatch the following letter to his New York colleague:

" August 16, 1968

The Manager
National Bank of North America
Merrick, N. Y.
Dear Sir:                    Re: Commonwealth Motor Parts
                                      and for Israel M. Gringorten

It has come to our attention that our customer, Commonwealth Motor Parts Limited, may be using the clearings in order to gain an unauthorized loan.

Since your bank is negotiating these cheques, we feel it is our duty to warn you of this practice in order to prevent loss to yourselves.

We advise that a cheque in the amount of $2,000. U.S. (Two thousand dollars U.S. funds), bearing your number 217, is being returned today marked N.S.F.

Yours truly,
s/M. Regier
Accountant "

This letter, set forth *in haec verba* in each of the four pleaded causes, and the consequences allegedly flowing therefrom, are the subject of the instant lawsuit. In the first two pleaded causes of action each plaintiff seeks recovery for defamation. The third cause, in behalf of Commonwealth, is for damages resulting from the " negligence " of the defendant in failing to timely credit the deposit with the New York agency; and the fourth cause of action, in favor of Gringorten, is predicated on the allegation that defendant, by gratuitously including his name in the aforesaid letter, " sought maliciously to injure [him] in his good name and reputation." Special Term was of the opinion that the third and fourth causes sounded in " prima facie tort " and dismissed them as essentially a dupli-

cation of the first and second causes of action. The first two causes, though falling within the protective aegis of qualified privilege, were sustained, as pleaded, on the theory that plaintiffs might overcome such defense at a trial by establishing a malicious motivation for the asserted defamatory statements. We agree only with the disposition of the fourth cause of action.

A careful reading of the letter in issue reveals that it was cautiously worded to bring to National's attention the possible existence of a practice more commonly, though less delicately, referred to as "check kiting". The result of such activity is that the negotiator receives, in effect, an unauthorized loan in the amount of the check for the period of time required to clear it.

It is, of course, fundamental that truth is an absolute, unqualified defense to a civil defamation action. (*Shenkman* v. *O'Malley*, 2 A D 2d 567, 572; Seelman, The Law of Libel and Slander in the State of New York, par. 170.)

Nowhere in the record before us is a bona fide question raised as to the truth of the statements contained in the August 16 letter. If National was indeed unknowingly giving plaintiffs credit for checks drawn against insufficient, as well as uncollected, funds, such credit was "unauthorized" within the precise meaning of that term as used in said letter.

Moreover, and at the very least, we believe the letter from one banking institution to another was conditionally privileged. The communication complained of related only to the operation of the accounts maintained by plaintiffs at branches of defendant and National. It was issued only by and to persons whose interest in the matter in which these accounts were being used was direct and substantial. The applicable law regarding the defense of qualified privilege was clearly enunciated by the Court of Appeals in *Shapiro* v. *Health Ins. Plan* (7 N Y 2d 56, 60–61) : " ' " A communication made *bona fide* upon any subject matter in which the party communicating has an *interest*, or in reference to which he had a *duty*, is privileged if made to a person having a corresponding *interest* or *duty*, although it contained criminating matter which, without this privilege, would be slanderous and actionable; and this though the duty be not a legal one, but only a moral or social duty of imperfect obligation " ' ' (*Byam* v. *Collins*, 111 N. Y. 143, 150). ' The rule of law that permits such publication grew out of the desirability in the public interest of encouraging a full and fair statement by persons having a legal or moral duty to communi-

cate their knowledge and information about a person in whom they have an interest to another who also has an interest in such person. Such privilege is known as a qualified privilege. It is qualified because it does not extend beyond such statements as the writer makes in the performance of such duty and in good faith believes them to be true ' (*Bingham* v. *Gaynor*, 203 N. Y. 27, 31).''

Although this privilege may, of course, be overcome by proof that the alleged defamatory statements were motivated by actual malice or culpable recklessness or negligence, a question of fact is not created in the absence of an appropriate evidentiary showing warranting the submission of such questions for jury resolution. (*Shapiro* v. *Health Ins. Plan, supra*; *Stillman* v. *Ford*, 22 N Y 2d 48.) On the record in this case, plaintiffs have failed to meet that burden. All that appears is the desire of one banker to warn a fellow banker that the latter might be assuming a risk of which he was unaware. Accordingly, the first and second causes should have been dismissed.

The third cause of action is entirely unrelated to the other causes and is predicated solely on the failure of defendant's New York agency to transmit advice of the cash deposit to the Toronto branch before the close of business that day, despite its promise to do so. Since, as asserted, it sounds in negligence, defendant contends that no such cause of action lies. (*Stella Flour & Feed Corp.* v. *National City Bank of N. Y.*, 285 App. Div. 182, affd. 308 N. Y. 1023.) However, we find sufficient facts alleged to support a breach of contract claim. Though mislabeled, a cognizable cause has been pleaded. (Cf. *Condon* v. *Associated Hosp. Serv.*, 287 N. Y. 411; *Foley* v. *D'Agostino*, 21 A D 2d 60.)

The order of Supreme Court, New York County (AMSTERDAM, J.), entered May 7, 1973, should be modified, on the law, to the extent of dismissing the first and second causes of action and reinstating the third cause; and otherwise affirmed, without costs or disbursements.

MARKEWICH, J. P., KUPFERMAN and CAPOZZOLI, JJ., concur.

Order, Supreme Court, New York County, entered on May 7, 1973, unanimously modified, on the law, to the extent of dismissing and severing the first and second causes of action and reinstating the third cause of action in the complaint, and otherwise affirmed. without costs and without disbursements.