ALBERT SCHWARTZBERG et al., Doing Business as DRY HARBOR NURSING HOME, Appellants, v NICHOLAS MONGIARDO et al., Respondents.

Third Department, November 27, 1985

## APPEARANCES OF COUNSEL

*Marvin L. Tenzer, P. C. (Scott B. Lunin* and *David J. Larkin, Jr.,* of counsel), for appellants.

*Robert Abrams, Attorney-General (Alan W. Rubenstein* and *William J. Kogan* of counsel), for respondents.

### OPINION OF THE COURT

WEISS, J.

This defamation action emanates from a statement made during the course of an informal administrative meeting. Plaintiffs are the owners of the Dry Harbor Nursing Home (Dry Harbor), a 360-bed residential health care facility located in Queens County. In December 1980, plaintiffs contracted to sell Dry Harbor to Robert Friedman and Jonathan Strasser, who, in turn, filed an application with the Public Health Council seeking approval of the transfer *(see,* Public Health Law § 2801-a). In November 1981, the Bureau of Financial Analysis[1] proposed that the transfer be disapproved, a finding partly due to the applicants' financial status. Upon receiving this report, the applicants met with defendant Nicholas Mongiardo, the Director of the Division of Health Care Planning and Resource Management, and defendant Charles Murphy, the Director of the Bureau of Financial Analysis, on December 18, 1981 for purposes of reviewing their financial feasibility. In the interim, the Bureau of Financial Analysis received an audit report prepared by the State Office of the Special Prosecutor (OSP),[2] which indicated that Dry Harbor had received between $1,200,000 and $1,300,000 in excess Medicaid reimbursements.[3] Defendants acknowledge that at this meeting they communicated the content of the OSP report to the applicants, inasmuch as the purchase contract required them to indemnify plaintiffs and hold them harmless against any unpaid liabilities upon the transfer of Dry Harbor.

---

1. The Bureau of Financial Analysis is part of the Division of Health Care Planning and Resource Management, which is charged with reviewing establishment/transfer applications and making recommendations to the Public Health Council.

2. Now known as the Deputy Attorney-General for Medicaid Fraud Control.

3. This report was partly based on material disclosed to a Grand Jury by Di-Com Corporation, the general contractor responsible for building Dry Harbor and other facilities owned by plaintiffs called Kings Harbor Care Center and Kings Harbor Manor Facility. We note that plaintiff Albert Schwartzberg was a shareholder in Di-Com Corporation.

On December 7, 1982, plaintiffs commenced the instant defamation action. Plaintiffs allege that the precise defamatory words used at the meeting were. as follows: "The amount of Medicaid overreimbursement is $1,200,000 to $1,300,000 on real property only. How are you going to cover it?" Plaintiffs contend that the clear implication of this statement is that they operated Dry Harbor in such a way as to fraudulently obtain over $1,200,000 in reimbursable real property costs from the Medicaid program, creating a liability that the purchasers would have to assume if the pending application was granted and the sale completed. It appears that the OSP report upon which defendants relied was never issued in final form. Special Term granted defendants' motion for summary judgment dismissing the third cause of action in the complaint,[4] holding that the communication was true, privileged and spoken without malice. Plaintiffs have appealed.[5]

■ In their second affirmative defense, defendants alleged that the statement was true and spoken without malice. It is axiomatic that truth is an absolute, unqualified defense to a civil defamation action *(see, e.g., Commonwealth Motor Parts v Bank of Nova Scotia,* 44 AD2d 375, 378, *affd* 37 NY2d 824; *Dolcin Corp. v Reader's Digest Assn.,* 7 AD2d 449, 454; 1 Seelman, Libel and Slander in New York ¶ 170, at 210 [1964]), and that substantial truth is all that is required *(Klein v Prial,* 32 AD2d 925, 926, *affd* 28 NY2d 506; *O'Connor v Field,* 266 App Div 121; *Grab v Poughkeepsie Newspapers,* 91 Misc 2d 1003, 1004). Plaintiffs maintain that since the OSP report was not finalized pursuant to departmental guidelines (10 NYCRR 86-2.7; *see also,* 18 NYCRR 518.1; *cf. Matter of Cortlandt Nursing Home v Axelrod,* 66 NY2d 169, 178-179), defendants may not rely on the report as conclusive evidence of the truth of its content. We agree. Since the report was subject to further audit, it cannot serve as proof of its own content. Inasmuch as no other evidence as to truth was offered, defendants failed to establish the affirmative defense of truth.

■ We find, however, that the third affirmative defense of privilege is more convincing and that Special Term correctly granted defendants summary judgment on this basis. Al-

---

4. The first two causes of action were dismissed as time barred by order entered July 8, 1983. Said order also dropped defendant John Saupp as a party and severed the third cause of action.

5. Plaintiffs also appealed from the denial of their motion to disqualify the Attorney-General from representing defendants due to a purported conflict of interest. They have not pursued that issue on this appeal.

though not articulated as a qualified privilege, that was clearly the test applied by Special Term. A qualified privilege may arise when a statement " 'is fairly made by a person in the discharge of some public or private duty, legal or moral, or in the conduct of his own affairs, in a matter where his interest is concerned' " *(Toker v Pollak,* 44 NY2d 211, 219, quoting *Lovell Co. v Houghton,* 116 NY 520, 526; *see also, Shapiro v Health Ins. Plan,* 7 NY2d 56, 60-61). This privilege serves to negate any presumption of implied malice and places the burden on plaintiffs to demonstrate that defendants were motivated by actual malice or ill will *(see, Toker v Pollak, supra,* p 219; *Kasachkoff v City of New York,* 107 AD2d 130, 135). The issue thus presented is twofold; did a qualified privilege attend defendants' statement and, if so, did plaintiffs demonstrate a triable issue of fact as to malice.

In our view, defendants are protected by a qualified privilege.[6] Both defendants were statutorily charged with reviewing the viability of the subject transfer application and making an appropriate recommendation to the Public Health Council (Public Health Law § 2801-a [3], [4]). There is little question that finances presented a critical concern of defendants with respect to this application, as evidenced by the November 1981 report of the Bureau of Financial Analysis. Indeed, this is precisely why the December 18, 1981 meeting was called. Pivotal, in this regard, is the fact that the applicants had assumed an obligation to satisfy all of plaintiffs' liabilities upon the transfer. The further possibility of a Medicaid reimbursement rate reduction commensurate with the $1,300,000 overpayment raised even more serious questions as to the wisdom of the transfer. Defendants were required to pass upon the viability of the applicants and to protect the residents of the facility. Since the OSP report was clearly germane to the inquiry, defendants were authorized to disclose its content.

Nor can we accept plaintiffs' contention that since the OSP report included information from a Grand Jury investigation of Di-Com Corporation, defendants acted in excess of their authority in relaying this information to the applicants and thus were not entitled to assert a qualified privilege. This argument stems from a previous decision involving plaintiffs, *Matter of Schwartzberg v Axelrod* (Sup Ct, Albany County,

---

6. Since defendants did not allege that they were protected by an absolute privilege, the merits of such an allegation are not addressed.

Mar. 23, 1984, Cobb, J.), where Special Term held that Grand Jury evidence subpoenaed from Di-Com Corporation, which was provided to the State Department of Health via an OSP audit, could not be disclosed by the Department absent a court order. To do otherwise would constitute a crime (Penal Law § 215.70; CPL 190.25 [4]). Plaintiffs' emphasis on the *Schwartzberg* decision, however, neatly overlooks a subsequent decision in *Matter of Lefkovitz v Axelrod* (Sup Ct, Albany County, Apr. 1, 1985, Cobb, J.), wherein Special Term distinguished *Schwartzberg* on the basis that the Grand Jury materials in *Lefkovitz,* which related to the Dry Harbor facility, were obtained pursuant to a valid order, on consent, authorizing the Department to review and utilize this information in its departmental audit. Since the subject OSP report emanates from the same materials authorized for disclosure in *Lefkovitz,* and the consent order was phrased in broad terms, we find defendants' communication within the scope of their authority and thus qualifiedly privileged *(see, e.g., Toker v Pollak,* 44 NY2d 211, 219, *supra).*

This conclusion is further buttressed by the fact that defendants' disclosure of the information contained in the OSP report was made in performance of their statutory duties of determining whether the proposed sale should be approved (Public Health Law § 2801-a [4]) and, as such, may be deemed excluded from the prohibition of Penal Law § 215.70. Nor does it appear that principles of collateral estoppel may be employed against defendants since the issue of the disclosure of information concerning Dry Harbor was not fully litigated in *Schwartzberg (supra),* which involved the Kings Harbor facilities *(see, e.g., Kaufman v Lilly & Co.,* 65 NY2d 449, 455).

Finally, we hold that plaintiffs have failed to demonstrate the existence of a triable issue of fact by proffering evidentiary proof that defendants were motivated by actual malice, ill will, personal spite, culpable recklessness or negligence *(Kasachkoff v City of New York,* 107 AD2d 130, 135, *supra).* Plaintiffs' sole affidavit in opposition to the motion was by their attorney and thus lacks probative value on the issue of malice *(see, Hollander v Long Is. Plastic Surgical Group,* 104 AD2d 357, 358). Since the record substantiates that defendants' statements were made in the performance of their job duties and in good-faith reliance upon the OSP report, plaintiffs have failed to demonstrate facts sufficient to infer malice. Summary judgment was therefore properly granted *(see, Buckley v Litman,* 57 NY2d 516, 521).

MAHONEY, P. J., KANE, CASEY and LEVINE, JJ., concur.
Judgment affirmed, with costs.