■ PAMELA BLACK, as Administrator of the Estate of NERRAW BLACK, Deceased, et al., Appellants, v CITY OF SCHENECTADY et al., Respondents. [800 NYS2d 240]—

Peters, J. Appeal from a judgment of the Supreme Court (Caruso, J.), entered January 22, 2004 in Schenectady County, upon a verdict rendered in favor of defendants.

In November 1997, two police officers responded to a report that an undesirable person was refusing to leave a residence in the City of Schenectady, Schenectady County. Upon their arrival, the officers spoke with Lisa Branch who identified the undesirable person as her boyfriend "Rah" (hereinafter decedent). When the officers witnessed decedent verbally threaten Branch, they placed him under arrest. Both in the residence and on route to the police department, decedent questioned the officers as to whether he would be afforded a phone call, what the charges were, when an arraignment would occur and whether or not bail would be set. He also made comments such as "knowledge is power," "truth is knowledge" and "X plus Y equals Z." As one of the arresting officers was processing decedent, who initially gave a false name, he spit out two small bags of crack cocaine. Later, another police officer, Patrick Horan, conducted a suicide prevention screening. During that screening, decedent refused to respond to most of Horan's ques-

tions. Even though Horan was aware that the arresting officers did not believe that decedent was at risk of suicide, he made the discretionary determination to refer the matter to his desk sergeant, James Sanders, based upon decedent's questionable intoxication.[1] With Sanders making the decision to place decedent on "active watch," as opposed to "constant watch,"[2] decedent was placed in a cell with his T-shirt, boxer shorts and socks. Upon a second security check, he was discovered hanging from his cell bars.

Plaintiffs commenced this action for wrongful death against the City of Schenectady, the two arresting police officers, as well as Horan and Sanders. The claims against the arresting officers were dismissed by Supreme Court, and all remaining claims were dismissed after trial by the jury. Plaintiffs unsuccessfully moved for a judgment notwithstanding the verdict, and this appeal ensued.

A trial court may set aside a jury verdict and grant the judgment it deems appropriate if it concludes, as a matter of law, that there is "simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]). To set aside a verdict and grant a new trial based upon a weight of the evidence assessment, a court must determine "whether 'the evidence so preponderate[d] in favor of the [plaintiff] that [the verdict] could not have been reached on any fair interpretation of the evidence' " (*Lolik v Big V Supermarkets*, 86 NY2d 744, 746 [1995], quoting *Moffatt v Moffatt*, 86 AD2d 864 [1982], *affd* 62 NY2d 875 [1984]; *see SCC Assoc. v Manufacturers & Traders Trust Co.*, 9 AD3d 809, 811-812 [2004]).

Here, the testimony focused on a suicide prevention policy which was implemented by order of the Schenectady Police Department on September 3, 1997. It detailed the proper procedure for suicide screening. Horan utilized the screening required by such order and found that between decedent's low score and his failure to exhibit high risk behaviors, an immediate referral

---

**1.** The Schenectady Police Department Suicide Prevention Screening Guidelines require that a desk officer be notified if a prisoner's behavior places him either in a high risk category or within one of the immediate referral categories. They further require a referral to the desk officer when, despite a low score, the prisoner displays verbal or behavioral indications that he or she may require medical or mental health attention.

**2.** Active watch requires a check on the prisoner every 15 minutes whereas constant watch requires that a police officer be stationed directly outside of the prisoner's cell for continuous observation.

was not required. However, despite the opinion of the arresting officers that decedent was not intoxicated, Horan testified that he "erred on the side of caution" when he completed the risk assessment to give decedent a higher score by finding that he was intoxicated and that this was his first arrest. Although this higher score did not warrant a referral to his desk sergeant, Horan again cautiously chose to make such referral. In light of the further elaboration by the arresting officers as to the basis for their belief that decedent was not intoxicated or at risk for suicide, coupled with testimony by decedent's mother that he had never exhibited suicidal tendencies, sufficient evidence supports Supreme Court's determination not to disturb the verdict. In reaching this determination, we acknowledge the administrative rule requiring defendants to have secured the deceased's prior arrest records at the time of his processing and that such records would have indicated that he previously attempted suicide. However, a violation of an administrative rule is not negligence per se but only some evidence of negligence which a jury is at liberty to disregard (see Conte v Large Scale Dev. Corp., 10 NY2d 20, 29 [1961]; Kozlowski v City of Amsterdam, 111 AD2d 476, 478 [1985]).

Mercure, J.P., Crew III, Lahtinen and Kane, JJ., concur. Ordered that the judgment is affirmed, without costs.