■ MICHAEL YAMMINE et al., Respondents, v JAMES DEVITA, as Chief of Police of the Village of Owego, et al., Appellants. [840 NYS2d 652]—

Peters, J. Appeals (1) from a judgment of the Supreme Court (Tait, J.), entered June 7, 2006 in Tioga County, upon a verdict rendered in favor of plaintiffs, and (2) from an order of said court, entered September 15, 2006 in Tioga County, which denied defendants' motion to set aside the verdict.

Plaintiffs are naturalized citizens of Lebanese descent who own and operate a restaurant in the Village of Owego, Tioga County. In April 2002, in the wake of the September 11, 2001 terrorist attacks on the World Trade Center and other sites, plaintiffs learned that the Chief of Police, defendant James DeVita, was parading around the Village, cloaked in his police uniform, making assertions that plaintiffs were terrorists, drug dealers and gun runners associated with Osama Bin Laden. In an effort to discourage further offensive comments by the Chief of Police, plaintiffs approached their personal attorney, Martin Tillapaugh, who also served as the Town Attorney, and defendant Herbert McDowell, a Village Trustee, to talk with Chief DeVita. When McDowell's efforts proved unsuccessful, plaintiffs served a notice of claim on the Village, naming Chief DeVita, Mayor Barbara Fink and each member of the Village's Board of

Trustees as defendants. Continued efforts to stop Chief DeVita after the notice of claim was served proved fruitless; he could not be quelled. For that reason, plaintiffs commenced this defamation action which resulted in a jury award of compensatory damages in the amount of $200,000 to each plaintiff. Defendants unsuccessfully moved to reduce the award pursuant to CPLR 4404 (a) and this appeal ensued on the issue of damages.

Typically, slander is not actionable unless special damages are proven (*see Liberman v Gelstein*, 80 NY2d 429, 434 [1992]). However, where, as here, the statements charge another with a serious crime or have the ability to injure another in his or her trade, business or profession, the statements become slander per se and "the law presumes that damages will result, . . . they need not be alleged or proven" (*id.* at 435; *see Sharratt v Hickey*, 20 AD3d 734, 735 [2005]; *Gatz v Otis Ford*, 274 AD2d 449, 450 [2000]; *see also Weldy v Piedmont Airlines*, 1995 WL 350358, *3, 1995 US Dist LEXIS 7958, *9-10 [WD NY 1995]). The unique nature of these cases is well established. " 'In actions for other torts there is generally . . . some standard by which the reasonableness of an award of damages may be tested, but it is seldom so in actions for libel and slander where the elements of wounded sensibilities and the loss of public esteem play a part' " (*Frechette v Special Mags., Inc.*, 285 App Div 174, 178 [1954], quoting *Lynch v New York Times Co.*, 171 App Div 399, 401 [1916]). For that reason, the amount of such damages "is peculiarly within the jury's province" (*Calhoun v Cooper*, 206 AD2d 497, 497 [1994]), requiring prudence and restraint by a trial court in the exercise of its discretion over these awards (*see Toomey v Farley*, 2 NY2d 71, 83-84 [1956]; *Calhoun v Cooper, supra* at 497).

Factors appropriately considered by a jury include the seriousness of the criminal conduct alleged (*see Liberman v Gelstein, supra* at 435), the psychological/physical effects to the target from addressing, defending and dealing with these accusations, and the size and demographics of the target's community to determine if the stigma would be difficult to evade (*see Rossignol v Silvernail*, 185 AD2d 497, 499-500 [1992], *lv denied* 80 NY2d 760 [1992]). Further considered are the effects that these statements have on a target's reputation and standing in the community, especially where the alleged slander is the sole cause of the target's injuries (*see Frechette v Special Mags., supra* at 178; *see also Weldy v Piedmont Airlines, supra,* 1995 WL 350358 at *4, 1995 US Dist LEXIS 7958 at *10).

The unique nature of this case was fully appreciated by the jury. McDowell, a defendant in the action, Tillapaugh, the Town

Attorney, and Frank Orlando, a retired school principal and close friend of the Chief DeVita, all testified. They described how DeVita, draped in the authority of his police uniform, referred to plaintiffs as terrorists and drug dealers in several public places. McDowell testified that Chief DeVita made these comments in a loud voice, "thirty or forty times," where many people were present. On numerous occasions, the statements were made in a restaurant setting and, on one such occasion, the accusations were so emphatic that "[p]eople two tables over could hear him easily." Both before and after the notice of claim was served, Chief DeVita was told to cease making these comments in public, yet he continued. While initially denying the conduct, Chief DeVita later admitted to the jury that he made the statements that plaintiffs were terrorists, drug runners and gun runners associated with Osama Bin Laden, and knew that they were false. Plaintiffs, naturalized American citizens who emigrated from Lebanon with numerous members of their family, lived in the community for over 20 years. They explained the frustration and humiliation that they experienced as a result of Chief DeVita's statements associating them with the events of September 11, 2001. They testified that people came into their restaurant and told them about these statements, some confirming that they heard them from Chief DeVita. Other customers simply stopped coming. Plaintiffs felt publicly scorned, both professionally and personally, as did their children. Plaintiff Michael Yammine testified that his children were picked on at school; one was refusing to leave the house while another two left to live with family in Lebanon. Plaintiff Hassid Kazan testified that his young daughter came off of the bus crying due to the statements made by the other children.

Supreme Court appropriately declined to reduce the monetary assessment made by the jury, reasoning as follows: "The facts of this case, as with most defamation cases, are unique. This case is made more unique by the fact that the underlying statements were made after the events of September 11, 2001. The slanderous statements raise issues, questions, concerns and suspicions that are related or heightened by reason of those events. Simply put, the Village Police Chief made public statements inferring that plaintiffs, who are Lebanese, have some similarity, ties, involvement, or relationship with those who participated in the events of September 11th." With this community knowing that Chief DeVita was previously a personal friend of plaintiffs who frequently patronized their restaurant, his statements became more credible since they originated from a source who, as Supreme Court noted, "had more authority, information, and presum[ptive] reliability than the typical individual."

For all of these reasons, we will not disturb the amount of damages awarded since it has record support and is not excessive as a matter of law.

Crew III, J.P., Carpinello, Mugglin and Kane, JJ., concur. Ordered that the judgment and order are affirmed, with costs.