■ DONALD G. STRADER, Respondent, v JOHN J. ASHLEY, JR., et al., Appellants, et al., Defendant. [877 NYS2d 747]—

Stein, J. Appeal from an order of the Supreme Court (Demarest, J.), entered January 22, 2008 in St. Lawrence County, which denied a motion by defendants John J. Ashley, Jr., Jeremy F. McDonald and Ogdensburg Building Supply, Inc. to, among other things, set aside a verdict in favor of plaintiff.

Plaintiff commenced this action for damages based on, among other things, defamation, malicious prosecution and trespass. Defendants John J. Ashley, Jr., Jeremy F. McDonald and Ogdensburg Building Supply, Inc. (hereinafter collectively referred to as defendants) defended the action[1] and Ogdensburg interposed a counterclaim for conversion. After trial, defendants were found liable for defamation and trespass and were assessed $26,800 in compensatory damages for those claims. Ashley and Ogdensburg were assessed an additional $250,000 in compensatory damages based on the jury's finding that they

---

1. Defendant Chad P. Woods did not answer the complaint and a default judgment was taken against him. He has not participated in this appeal.

were also liable for malicious prosecution. The jury also found that plaintiff was entitled to punitive damages. Following a separate hearing to determine the amount of punitive damages, plaintiff was awarded the sum of $100,000 as against Ashley and Ogdensburg, $5,000 as against McDonald and $12,500 as against defendant Chad P. Woods. The jury found no cause of action on the conversion counterclaim. Supreme Court denied defendants' subsequent motion for an order setting aside the verdict as being either contrary to the weight of the evidence or excessive. Defendants now appeal and we affirm.

The chain of events leading to the commencement of this action began with a telephone call from Woods to Ashley, alleging that he had witnessed plaintiff stealing 25-pound boxes of nails and other merchandise from Ashley's store.[2] According to Ashley, Woods informed him that the items were stored in a garage and a Quonset hut located on plaintiff's property. When Ashley's attempts to call plaintiff regarding the theft allegations were unsuccessful, Ashley brought his son-in-law, McDonald, to plaintiff's property. Ashley and McDonald both testified that they entered the Quonset hut and found at least 30 boxes of a particular type of screw sold at Ashley's store. They also testified that they left the building without taking pictures, but that they made a mental list of the items therein.

When Ashley ultimately spoke with plaintiff, plaintiff denied any wrongdoing and advised Ashley that Woods had previously stolen money from a client while working for plaintiff and could not be trusted.[3] Plaintiff's refusal to pay Ashley for the allegedly stolen items prompted Ashley to report the matter to the police, to whom he and McDonald gave written statements. Ashley also gave the investigating officer a written list of the items that he allegedly saw in plaintiff's Quonset hut. Consequently, plaintiff was arrested and charged with grand larceny in the fourth degree. The charge was subsequently reduced to petit larceny and, following a jury trial, plaintiff was acquitted.

Defendants assert that the jury's verdicts regarding the claims of defamation and malicious prosecution were against the weight of the evidence. In order to reach that conclusion, we must determine that " 'the evidence so preponderates in favor of the defendant[s] that it could not have been reached on any fair interpretation of the evidence' " (*Moffatt v Moffatt*, 86 AD2d

---

**2.** Ogdensburg is the owner of the store and Ashley is the president and principal shareholder of the corporation.

**3.** In fact, Woods testified at a deposition that he blamed plaintiff for the fact that the police investigated him and charged him with petit larceny, to which he pleaded guilty.

864, 864 [1982], *affd* 62 NY2d 875 [1984], quoting *O'Boyle v Avis Rent-A-Car Sys.*, 78 AD2d 431, 439 [1981]; *see* CPLR 4404; *Lolik v Big V Supermarkets*, 86 NY2d 744, 746 [1995]; *Black v City of Schenectady*, 21 AD3d 661, 662 [2005]).

Turning first to the cause of action for defamation, Supreme Court properly determined as a matter of law that the statements given by defendants to the police were defamatory if false, were published to others and referred to plaintiff, thereby establishing a prima facie case (*see Rinaldi v Holt, Rinehart & Winston*, 42 NY2d 369, 379 [1977], *cert denied* 434 US 969 [1977]). As truth is an absolute defense to a civil defamation action (*see Ingber v Lagarenne*, 299 AD2d 608, 609 [2002], *lv denied* 99 NY2d 507 [2003]; *Schwartzberg v Mongiardo*, 113 AD2d 172, 174 [1985], *lv denied* 68 NY2d 602 [1986]), the sole question remaining for the jury to determine was whether defendants' statements were false. Defendants concede that the only evidence of the veracity of their statements was their own testimony that they had personally observed approximately 30 boxes of screws inside plaintiff's Quonset hut. While plaintiff admitted that he was in possession of approximately six unopened boxes of screws, he denied having stolen anything from defendants and testified that he was given at least two boxes and purchased the others. Furthermore, eight witnesses— including one retired police officer—testified that they were in the Quonset hut at various times immediately preceding the date on which Ashley and McDonald were there and did not see a large pile of boxes of screws.

A jury is "free to weigh and discredit the testimony of any factual witness, even in the absence of direct proof contradicting such witness's version of events" (*Dobies v Brefka*, 45 AD3d 999, 1000 [2007]). Here, the jury apparently credited the testimony of plaintiff and his witnesses that he did not steal screws from Ashley over the testimony of defendants.[4] Inasmuch as the jury's determinations of credibility are to be accorded great deference (*see Whitmore v Rowe*, 245 AD2d 669, 670 [1997]), and we cannot say that its findings could not have been reached on any fair interpretation of the evidence, we find that the jury's verdict on the first cause of action is not against the weight of the evidence.

We next address the claim for malicious prosecution. As defendants concede that a criminal proceeding was commenced against plaintiff based upon Ashley's accusations and that the proceeding terminated in plaintiff's favor, the only issues are

---

4. Notably, the jury in the criminal trial evidently made the same determination.

whether the jury's findings that Ashley acted without probable cause and with malice and that plaintiff suffered a special injury were contrary to the weight of the evidence (*see Minasian v Lubow*, 49 AD3d 1033, 1034 [2008]). The evidence established that Ashley was advised of Woods' history of dishonesty and motive to retaliate against plaintiff. Further, in view of the conflicting testimony regarding the presence of the subject screws on plaintiff's property, and since the only indicia of plaintiff's guilt came from defendants' own arguably self-interested testimony that they actually observed the items that Woods reported plaintiff had stolen—which testimony was deemed not credible by the jury—a reasonable interpretation of the facts existed to support the jury's determination that defendants acted without probable cause (*see Colon v City of New York*, 60 NY2d 78, 82 [1983]).[5] Moreover, the jury was entitled to infer malice based upon its finding that Ashley lacked probable cause to initiate the criminal proceeding (*see Martin v City of Albany*, 42 NY2d 13, 17 [1977]).

Defendants' challenge to the awards of damages is also unpersuasive. We note that the amount of damages in a libel action is " 'peculiarly within the jury's province' " (*Yammine v DeVita*, 43 AD3d 520, 521 [2007], quoting *Calhoun v Cooper*, 206 AD2d 497, 497 [1994]; *see Frechette v Special Mags., Inc.*, 285 App Div 174, 178 [1954]; *Lynch v New York Times Co.*, 171 App Div 399, 401 [1916]). Here, record evidence demonstrated that the criminal charges brought against plaintiff were reported in the local newspaper and that, as a result of those charges, he was suspended, and ultimately forced to resign, from his position as code enforcement officer (a job which paid him $7,500 annually). Plaintiff further testified that he lost carpentry work and income from his position as a substitute teacher after his arrest. In addition, plaintiff testified that he suffered emotional and physical harm—including feeling anxious and worried about his reputation in the community, feeling sick to his stomach, difficulty sleeping and eating and losing weight—and that he stopped socializing for fear of public scorn. Plaintiff also incurred legal expenses in defending himself against the criminal charges. Neither the award of $26,800 for the defamation claim nor the award of $250,000 for the malicious prosecution claim deviate materially from what is reason-

---

**5.** Defendants' alternative argument that a civil complainant who merely provides information to police cannot be held liable for malicious prosecution was not raised at trial and, thus, was not preserved for our review. In any event, we would find it to be without merit under the circumstances of this case (*compare Dempsey v Masto*, 83 AD2d 725, 726 [1981], *affd* 56 NY2d 665 [1982], *with Krzyzak v Schaefer*, 52 AD3d 979, 980 [2008]).

able compensation (*see Dobies v Brefka*, 45 AD3d at 1001; *Yammine v DeVita*, 43 AD3d at 521; *Byrd v New York City Tr. Auth.*, 172 AD2d 579, 581 [1991], *lv denied* 80 NY2d 751 [1992]; *Maxwell v City of New York*, 156 AD2d 28, 35 [1990]; *Orndorff v De Nooyer Chevrolet*, 117 AD2d 365, 369 [1986]; *Burlett v County of Saratoga*, 111 AD2d 426, 427 [1985]).

We also find the award of punitive damages to be appropriate. Punitive damages are awarded in an effort to punish the wrong-doer and to deter repetition of such behavior in the future (*see Ross v Louise Wise Servs., Inc.*, 8 NY3d 478, 489 [2007]). Here, the jury awarded punitive damages after determining that defendants had defamed plaintiff and that Ashley caused a criminal proceeding to be initiated against him without probable cause to believe him guilty of the crime charged, resulting in a negative impact on plaintiff's personal and professional life. It was not unreasonable for the jury to determine that defendants' actions were "not simply intentional but 'evince[d] a high degree of moral turpitude and demonstrate[d] such wanton dishonesty as to imply a criminal indifference to civil obligations' " (*id.* at 489, quoting *Walker v Sheldon*, 10 NY2d 401, 405 [1961]). Moreover, inasmuch as the awards for compensatory damages substantially exceed the awards for punitive damages, the disparity between them comports with what has been determined to be an acceptable ratio and is not so exorbitant to be deemed " 'actuated by passion' " (*Guariglia v Price Chopper Operating Co., Inc.*, 38 AD3d 1043, 1044 [2007], *lv denied* 9 NY3d 801 [2007], quoting *Nardelli v Stamberg*, 44 NY2d 500, 504 [1978] [citation omitted]; *see State Farm Mut. Automobile Ins. Co. v Campbell*, 538 US 408, 425 [2003]).

Finally, we discern nothing inappropriate in the nominal damage award of $200 with regard to the trespass claim, notwithstanding plaintiff's failure to demonstrate actual damages incurred as a result thereof (*see Danchak v Tuzzolino*, 195 AD2d 936, 938 [1993]).

Peters, J.P., Rose, Lahtinen and Kane, JJ., concur. Ordered that the order is affirmed, with costs.