█ Richard Doin et al., Respondents-Appellants, v Champlain Bluffs Development Corporation et al., Appellant-Respondents, et al., Defendants. [894 NYS2d 169]—

This appeal arises out of a number of separate actions, ultimately joined for trial, at the center of which is a strip of land lying along the shore of Lake Champlain in the Town of Plattsburg, Clinton County, known as Singing Sands Beach (hereinafter the beach). Plaintiffs are owners of townhouses situated along the beach. Defendant Champlain Bluffs Development Corporation (hereinafter Champlain) is the fee owner of that portion of the beach as is relevant herein.

In 1983, in contemplation of building a townhouse development, the parcel of land upon which plaintiffs' townhouses now lie was transferred by Bluff Point Golf and Country Club, Inc. to Bluff Point Development Corporation. In that transaction, the Country Club retained ownership of the beach, and specifically provided in an amended memorandum of agreement (hereinafter the agreement) that the beach was "irrevocably dedicat[ed] . . . to the purpose[s] of bathing, boating and access to Lake Champlain with no structure[s] to be erected or placed thereon, other than those customarily related to bathing or boating activities." The agreement was incorporated into the original conveyance to Bluff Point Development and into each subsequent conveyance from Bluff Point Development to plaintiffs, or their predecessors in interest, as the case may be. The agreement further granted to the successors and assigns of either party a "perpetual right running with the land to use the beach for these purposes."

The rights of plaintiffs to nonexclusive use of the beach is not disputed on appeal. The primary issue before us is the right to develop the beach. The original plan to build the townhouse development was to build 38 townhouse units in two phases. As such, the agreement provided that use of the beach would be "subject to such reasonable rules and regulations and charges for the development, maintenance and orderly operation thereof as may from time to time be established in writing and subscribed by *a majority of the owners to whom the privilege of use has been conveyed, with the owner or owners of each individual residential property to have one right to subscribe in*

*determining the same. Until such time as the same have been sold and conveyed, [Bluff Point Development] shall have one such right for each of the thirty-eight (38) lots designated as Phases I and II in the aforedescribed [proposed townhouse development]"* (emphasis added).

Phase I of the project resulted in the construction of 16 townhouse units, many of which are owned by plaintiffs. The remaining 22 units were never constructed. For the past 20 years, the townhouse owners enjoyed the use of the beach and maintained it by mowing the grass portion (the beach area has very limited sand and was essentially a large lawn in front of the townhouse properties). In 1988, the townhouse owners formed a homeowners association which collects dues for, among other things, the maintenance of the beach. Each townhouse faces the lake with front doors leading to the beach, and the owners have always accessed the beach by walking directly from their individual units to the lake. Townhouse owners regularly stored small personal boats on the beach by drawing them up onto the shore, apparently without complaint.

In 2004, Champlain and defendant J. David Dame, Champlain's president and sole shareholder, acquired all remaining properties of the original conveying parties, the Country Club and Bluff Point Development, including the beach and the remaining undeveloped portion of lot 19, the parcel where the townhouses now sit. This undeveloped portion of lot 19 is an irregularly shaped parcel including a narrow strip of land that divides plaintiffs' townhouse properties and the beach. Champlain has since conveyed the remainder of the land originally slated for phase II of the townhouse development, lying south of plaintiffs' townhouses, to defendants Arthur S. Spiegel, Timothy M. Duffy, Gretchen A. Duffy and Terry M. Meron. Champlain has also developed other holdings to the west and farther to the south of the townhouses.

Following opposition by some plaintiffs to Champlain's proposed development of its other holdings, and admittedly to inconvenience those plaintiffs, Dame began attempting to enforce some aspects of the agreement and/or covenants in plaintiffs' deeds that had never been enforced by his predecessors in interest. Specifically, the agreement and the covenants in plaintiffs' deeds provide easements from the townhouse properties to the beach over areas "designated by" the developer. Accordingly, Dame notified plaintiffs that they were required to access the beach only by way of a paved walkway between two of the townhouse structures and could no longer do so directly from their units. When many of the townhouse owners failed to

comply, Dame erected a wire fence between the townhouses and the beach to prevent direct access to the beach. That fence was removed during the course of this action.

Dame also demanded that the townhouse owners store their rowboats, canoes and kayaks—when not in use—in an area he designated, some 50 to 100 feet inland from the water, instead of leaving them pulled up on the sand. This action was based on Dame's presumed authority, under the agreement, to designate the areas where boats may be "docked or drawn up" on the beach. After the homeowners did not comply, he moved their boats to the designated area himself and, eventually, constructed a boat storage rack directly in front of the townhouse owned by plaintiffs Richard Doin and Suzanne Doin. The 19-foot-high boat rack obstructed the Doins' view of the lake and necessitated heavy equipment to remove boats stored near the top. Dame eventually removed the boat rack. Finally, with the purpose of transforming the look of the beach, Dame asked the townhouse owners to stop mowing the grass located along the beach and on the narrow strip of land between the beach and the townhouse properties, because he wanted to build fire pits surrounded by dune-like mounds of earth. When the townhouse owners refused, Dame stripped the grass, created the fire pits and reseeded the area with long beach grass.

Lawsuits ensued. Significant to the issues being pursued on appeal, plaintiffs sought a determination under RPAPL article 15 to resolve any claims to the beach adverse to those of the plaintiffs, for injunctive relief against Champlain and Dame and for compensatory and punitive damages. Plaintiffs also asserted claims of private nuisance and trespass against Dame for erection of the fence and boat rack and for confiscating their boats. Champlain counterclaimed alleging trespass by plaintiffs, seeking a RPAPL article 15 determination resolving defendants' property rights in the beach and surrounding lands and seeking contribution from plaintiffs for costs incurred for maintenance of the beach.

Supreme Court joined these and the parties' other actions for a bench trial. Among other things, the court dismissed Champlain's counterclaims for contribution for maintenance of the beach and for trespass. In determining the property rights of the parties under RPAPL article 15, the court found that plaintiffs have an easement to access the beach directly from their properties. However, the court concluded that because phase II of the townhouse development project will never be completed, the voting mechanism established by the agreement is a nullity. Accordingly, the court held that defendants are free

to develop lands to which they hold title—without plaintiffs' consent—including the beach, subject to New York law and the rights of the townhouse owners to access the beach. The court ruled that the townhouse owners are responsible for a pro rata share of the maintenance and upkeep of the beach but no portion of the costs of development undertaken by Champlain. Further, Champlain was held responsible for any capital improvements on the beach or its other property, but had the right to charge townhouse owners for the use thereof.

Supreme Court additionally found Dame and Champlain liable for trespass to chattels (the boats) and for creating a private nuisance, and awarded plaintiffs compensatory and punitive damages. Dame and Champlain (hereinafter collectively referred to as defendants) appeal, challenging only Supreme Court's finding of nuisance and its damage awards. Plaintiffs cross-appeal, asserting that Supreme Court erred in holding that (1) plaintiffs have no control over development of the beach, (2) plaintiffs were not entitled to damages under RPAPL article 15, (3) Champlain's property extends to the low watermark of Lake Champlain, and (4) two boat owners were not entitled to compensatory damages.

Initially, in order to give context to the specific holdings that follow, we begin by clarifying our findings concerning the size and location of the beach. We concur with Supreme Court that the beach consists of those lands retained by the Country Club when it conveyed the parcel slated for townhouse development to Bluff Point Development. Hence, the beach is a 120-foot-wide strip of land, measured from the high watermark of Lake Champlain, and running the entire length of the parcel conveyed in that transaction to Bluff Point Development. It runs parallel and to the east of the land on which plaintiffs' townhouses sit and encompasses a portion of the parcels now owned by Meron, the Duffys and Spiegel. The beach does not include that portion of lot 19 which Champlain retained, the irregularly shaped parcel including the narrow strip that runs north and south and is located between plaintiffs' properties and the beach. Accordingly, all references hereinafter to "the beach" are to that 120-foot strip running to the east of the remainder of lot 19 and included in parcels now owned by Meron, the Duffys and Spiegel.[1]

We now turn to the issues raised by plaintiffs' cross appeal.

---

1. We also deem it necessary to address Supreme Court's conclusion that Champlain owns beyond the high watermark to the low watermark of the lake along the easterly portion of the parcel identified as the beach. Contrary to defendants' contention, we do not find this issue academic, as the relief that

We hold that although Champlain is the successor in interest to both original parties of the agreement, thereby merging certain aspects of that agreement, those portions of the agreement that impact plaintiffs remain enforceable, as plaintiffs are also successors in interest to Bluff Point Development. Further, we agree with plaintiffs that the voting mechanism set forth in the agreement has not been rendered irrelevant by the events of the past 20 years. Supreme Court found that because Bluff Point Development retained the votes of the 22 properties planned for phase II and that will now never come into being (thereby perpetually outnumbering the 16 votes created by phase I), and because Champlain has the power to create an unknown number of additional voting rights by conveying other residential properties from its remaining land holdings with rights to use the beach,[2] the voting arrangement is a nullity.

We disagree. Upon our review of the agreement language, we find that it contemplates that, when all of the townhouses were constructed and sold off, the use and development of the beach would be controlled by the townhouse owners and any future residential property owners who had been deeded access to the beach under the terms of the agreement. The developer's retention of the voting rights for those townhouses to be built was

Champlain requested under RPAPL article 15 specifically requests a determination of any claims adverse to those of defendants to the beach and surrounding property, seeking resolution of the "actual size and location" of the beach. The question of whether the upland owner holds title to land below the high watermark is controlled by the specific language in the chain of title (see *Buran v Peryea*, 246 AD2d 856, 857-858 [1998]; *Chism v Smith*, 174 App Div 332, 334-335 [1916]). Although the chain of title includes some inconsistencies, the conveyance of the parcel from the Country Club to Champlain defined the land with reference to the "Petrashune Map," which shows the boundaries of the conveyed land as being the high watermark. Further, the general rule is that "[i]n the case of our inland seas or large navigable bodies of water, the title of the riparian owners of land, adjacent to such bodies of water, extends only to [the] high-water mark" (*Stewart v Turney*, 237 NY 117, 120 [1923]). Thus, we hold that Champlain owns only to the high watermark of the lake; the eastern boundary of the beach is thus the same as the eastern boundary of Champlain's property.

2. The 1984 amended memorandum granted Champlain's predecessor in interest (the Bluff Point Development)—and its successors and assigns—the right to convey beach rights along with lands then owned or after-acquired by Bluff Point Development. In so holding, we reject plaintiffs' argument that the right to grant beach access to additional parties does not extend to the Bluff Point Development's successors in interest. The amended memorandum agreement specifically states that it "shall bind and inure to the benefit of the successors and assigns of the respective parties." Accordingly, Champlain, as the successor in interest to Bluff Point Development, has the right to assign additional unexclusive beach rights when selling other residential property at Bluff Point.

clearly a temporary arrangement put in place until the contemplated townhouse development had been completed. There is no indication that the parties ever intended that the original developer or its successor would have a perpetual say in—much less total control over—the maintenance and development of the beach after all townhouses had been sold.

Indeed, the developer's retention of the 22 phase II voting rights was inextricably tied to the land slated for construction in phase II. Once Champlain sold those lots to other residential property owners,[3] it terminated all of its rights to vote on the basis of that ownership. To be sure, under the express terms of the agreement, Champlain has the power to create additional voting rights by deeding to residential purchasers at Bluff Point the right to use the beach; however, it has no right, on the basis of its status as fee owner or developer, to vote. The agreement granted no voting rights to the developer based on its additional holdings or as the fee owner of the beach; the voting rights were directly associated with the developer's continued ownership of the land reserved for construction of the townhouses envisioned by phase II of the townhouse development plan.

Accordingly, we hold that Champlain has no right, as fee owner, to develop the beach and will bear any necessary cost of restoring the beach to its previous condition. Instead, each townhouse owner, as well as each additional owner of Bluff Point residential property who has been or will be deeded beach access by Champlain,[4] shall have a vote to make decisions regarding maintenance and development of the beach—subject to the restrictions set forth in the agreement—and shall also bear a pro rata share of the expense of same. The decision of whether and how to restore the beach to its original state will lie within the power of this voting body and, because Supreme Court did not reach the issue in light of its contrary holding, we will remit the matter for a determination as to what relief plaintiffs are entitled under RPAPL article 15.

Next, we turn to defendants' contentions on appeal, beginning with their assertion that Supreme Court erred in finding that their construction of the boat rack and fence constituted a private nuisance. One who, by intentional action or inaction, substantially and unreasonably interferes with others' use and

---

3. The three conveyances by Champlain to Meron, the Duffys and Spiegel represent all of the lands that originally made up phase II of the Bluff Point Townhouse Development.

4. Champlain has deeded at least five parcels from its other Bluff Point holdings, which grant rights to use the Bluff Point beach, making specific reference to the agreement.

enjoyment of their lands has committed a private nuisance (see *Copart Indus. v Consolidated Edison Co. of N.Y.*, 41 NY2d 564, 568 [1977]; *Balunas v Town of Owego*, 56 AD3d 1097, 1098 [2008], *lv denied* 12 NY3d 703 [2009]; *Queens County Bus. Alliance v New York Racing Assn.*, 98 AD2d 743, 744 [1983]). While "things merely disagreeable, which simply displease the eye . . . no matter how irritating or unpleasant, are not nuisances" (*Dugway, Ltd. v Fizzinoglia*, 166 AD2d 836, 837 [1990] [internal quotation marks and citation omitted]), here the fence and the boat rack were more invasive. The five-foot post and wire fence—admittedly erected to inconvenience plaintiffs—served as a substantial and actual barrier to plaintiffs' access to the beach for three years before it was removed during the trial in this matter. As Supreme Court noted, the townhouses were designed to face the lake and, as the photographs in the record depict, the fence made it impossible for townhouse owners to use the steps from their patios to the beach. Although they could still access the beach by a circuitous route, the fence had its intended consequence of directly and negatively impacting plaintiffs' use of their property.[5] Likewise, the boat rack, 20 feet high and positioned directly in front of the Doins' property, effectively obstructed the view of the lake for a year before Dame removed it. Under these circumstances, we are not persuaded to interfere with Supreme Court's conclusion that the fence and boat rack constituted private nuisances (see *Mandel v Geloso*, 206 AD2d 699, 700 [1994]; see also *Hitchcock v Boyack*, 277 AD2d 557, 558 [2000]; cf. *Jennings v Fisher*, 258 AD2d 722, 723 [1999]).

Next, we address defendants' challenges to the damages awarded by Supreme Court based on the findings of nuisance and trespass. On appeal, defendants do not challenge the finding that Dame's removal of plaintiffs' boats constituted a trespass. They do challenge Supreme Court's assessment of damages, pointing out that the only cost figure offered at trial was hearsay testimony regarding prices for boat rental found on the Internet. However, as no objection was made to this testimony during trial, we decline to disturb the compensatory damage awards related to the finding that Dame committed

---

5. Supreme Court's conclusion that plaintiffs' property rights were interfered with was premised on its finding—based on plaintiffs' 20 years of uninterrupted practice—that plaintiffs' easement to access the beach extends directly from each townhouse to the beach. Defendants do not directly contest this issue on appeal.

trespass by removing plaintiffs' boats (*see Strader v Ashley*, 61 AD3d 1244, 1247 [2009], *lv dismissed* 13 NY3d 756 [2009]).[6]

Turning to the damages awarded in connection with private nuisance, the proper measure of damages for temporary nuisance is the reduction in either the rental value or the usable value of plaintiffs' properties (*see Wheeler v Lebanon Val. Auto Racing Corp.*, 303 AD2d 791, 794 [2003], *lv denied* 100 NY2d 507 [2003]; *Tom Sawyer Motor Inns v Chemung County Sewer Dist. No. 1*, 33 AD2d 720, 722 [1969]). Here, the Doins offered evidence that, as a result of the boat rack, their property assessment was substantially lowered. We find this evidence of a decrease in property value sufficient to support Supreme Court's award of compensatory damages to the Doins in relation to the boat rack. However, Suzanne Doin's testimony and supporting documentation is the only admitted quantitative evidence regarding value of any kind in the record. Although plaintiffs originally sought to offer testimony regarding the decreased value of the remaining properties through the testimony of a real estate appraiser, after objections and debate, plaintiffs voluntarily withdrew that evidence. As plaintiffs failed to offer any other evidence of pecuniary loss caused by the fence or boat rack, the compensatory damage award cannot stand. Accordingly, with the exception of the Doins, plaintiffs are entitled to only nominal damages of $1 each on their nuisance claims (*see Dukett v Wilson*, 31 AD3d 865, 869 [2006]; *Buchwald v Waldron*, 183 AD2d 1080, 1081 [1992]).

Defendants also challenge the award of punitive damages. "A party seeking to recover punitive damages for trespass on real property has the burden of proving that the trespasser acted with actual malice involving intentional wrongdoing, or that such conduct amounted to a wanton, willful, or reckless disregard of the party's right of possession" (*Golonka v Plaza at Latham*, 270 AD2d 667, 670 [2000] [internal quotation marks and citation omitted]), such that the award serves "as a penalty to the trespasser and as a warning to others" (*Chlystun v Kent*, 185 AD2d 525, 527 [1992]). Here, given the record evidence that, in erecting the fence, constructing the boat rack and removing plaintiffs' boats, Dame was motivated solely by a desire to inconvenience plaintiffs, we will defer to Supreme Court's conclusion that punitive damages are warranted (*see*

---

**6.** As a result of an apparent oversight, Supreme Court did not award compensatory damages to two boat-owning plaintiffs. There being no basis upon which to distinguish these boat-owning plaintiffs from the others, the Hamerniks and the estate of Prescott are also entitled to damages of $750 each.

*Strader v Ashley*, 61 AD3d at 1248; *Chlystun v Kent*, 185 AD2d at 527; *see also Western N.Y. Land Conservancy, Inc. v Cullen*, 66 AD3d 1461, 1463 [2009]; *Golonka v Plaza at Latham*, 270 AD2d at 670-671).

Cardona, P.J., Malone Jr. and Kavanagh, JJ., concur; Mercure, J., not taking part. Ordered that the judgment is modified, on the law and the facts, without costs, by reversing so much thereof as (1) determined that defendants Champlain Bluffs Development Corporation, Arthur S. Spiegel, Timothy Duffy, Gretchen A. Duffy and Terry M. Meron own fee title to the lands between the high watermark and low watermark of the lake, (2) reformed the 1984 amended memorandum of agreement and declared the voting rights arrangement with respect to the use and development of the beach a nullity, (3) enjoined plaintiffs from maintaining the beach and declared that Champlain has a unilateral right to develop the beach, and (4) awarded compensatory damages to plaintiffs other than plaintiffs Richard Doin and Suzanne Doin for their losses caused by the fence and boat rack; it is ordered that (1) Champlain, Spiegel, the Duffys and Meron own fee title only to the high watermark of the lake, (2) each townhouse owner has a single voting right and will bear a pro rata cost of maintenance and development along with any residential grantee of Champlain of beach rights as per the 1984 amended memorandum of agreement, (3) the right to develop the beach lies exclusively in those having voting rights, (4) compensatory damages of $750 are awarded each to two additional boat-owning plaintiffs, the Hamerniks and the estate of Prescott, and (5) compensatory damages to all plaintiffs except the Doins shall be nominal damages of $1 each; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.